LONG ISLAND TRUST COMPANY, Respondent, *v.* PORTA ALUMINUM CORP. et al., Appellants.

Second Department, April 1, 1974.

*Norman L. Rosenthal* for appellants.

*Cullen & Dykman* (*Peter J. Mastaglio* of counsel), for respondent.

SHAPIRO, J.  In an action in replevin under article 71 of the CPLR, the Special Term, on notice to the defendants, granted the plaintiff's motion for an order of seizure (CPLR 7102) on the giving of undertakings in specified amounts.  The defendants seek a reversal, upon the ground, among others, that the statute is unconstitutional.

### THE FACTS.

The plaintiff made a loan to Gilbalstan, Inc. (the debtor), a party unconnected with this lawsuit.  In connection therewith the debtor gave the plaintiff its promissory note in the sum of $23,952.24 payable in 36 monthly installments.  As collateral for the payment of the note, the debtor executed and delivered to the plaintiff a security agreement, dated March 22, 1972, with a schedule annexed thereto (Schedule A) which, among other things, specifically enumerated three tractors and six trailers owned by the debtor.[1]

---

1. After the enumeration of the specified vehicles, the following language appears in Schedule A:  " Together with all fixtures, additions, replacements, motors, fittings and substitutions now or hereafter attached to or used in connection with any of the above chattels; *and, in addition thereto, this mortgage shall cover and become a lien on all goods and chattels now in, on or upon the within described premises, whether enumerated in this mortgage instrument, or not,* and shall also, ipso facto, cover all goods and chattels which the debtor may hereafter acquire and place or install in, on or upon said premises, which after-acquired property shall forthwith become subject to the lien hereof and debtor agrees to execute and deliver to the holder of this mortgage such instruments in form for recording as may be required by the holder of this mortgage to create a valid lien thereon " (emphasis supplied).

As permitted by the statute, the plaintiff filed a financing statement with the County Clerk of Nassau County and the Secretary of State of the State of New York (Uniform Commercial Code, § 9–401). As permitted by the agreement and the applicable statute (Uniform Commercial Code, § 9–402, subd. [2], par. [c]), the financing statement was signed by the plaintiff alone and stated in pertinent part: "5. This Financing Statement covers the following types (or items) of property: all motor vehicles & attachments now owned or hereafter acquired. (X) Proceeds."

Thereafter and on or about May 26, 1972 appellant Porta Aluminum Corp. (Porta) purchased one tractor and six trailers from the debtor for $16,000, which vehicles the latter in writing represented to be "completely paid for" and without liens of any kind, with the exception of an Internal Revenue Service levy. Except for a Dorsey semi-trailer, they were part of the vehicles listed in the security agreement. Appellant Alwinseal, Inc. (Alwinseal) purchased one tractor and one trailer (listed in the security agreement) from the debtor and again the latter represented that there were no liens affecting the vehicles.[2]

The debtor failed to pay the installment due on December 30, 1972. The accelerated balance owed by it on the promissory note on that day was $20,635.88. Thereafter, the plaintiff commenced this action and simultaneously with the service of the complaint in the action[3] it served the defendants with an order directing them to show cause why the court should not issue an order of seizure for the vehicles in the defendants' possession. The Special Term granted the plaintiff's motion and by its order, *inter alia,* directed the Sheriff to seize not only the vehicles specifically mentioned in Schedule A of the security agreement but also the afore-mentioned Dorsey semi-trailer.

### THE ISSUES.

The principal issues urged by the appellants on this appeal are (1) whether the seizure statute (CPLR 7102) is unconstitutional, because it does not provide, according to them, for an opportunity to be heard *before* the seizure, (2) whether

2. According to Alwinseal's affidavit in opposition to the plaintiff's motion, the trailer is no longer in Alwinseal's possession, having been sold for a small sum as obsolete and inadequate.

3. In their separate answers to the plaintiff's complaint (some of the details of which were amplified in their answering affidavits) the defendants set forth 11 defenses and a counterclaim. We consider all of the defenses, except the third, fourth and fifth, to lack merit. These three defenses will be dealt with in our discussion of the applicable law.

the plaintiff agreed to look solely to the "proceeds" if the chattels were sold, thereby waiving its lien on the chattels, and (3) whether the after-acquired goods and chattels clause in the security agreement covers tractors and trailers other than those listed in Schedule A of the security agreement.

## THE LAW.

CPLR 7102 was enacted in its present form (L. 1971, ch. 1051, § 1, eff. July 2, 1971) to overcome the effect of a three-Judge United States District Court decision in *Laprease* v. *Raymours Furniture Co.* (315 F. Supp. 716 [July 29, 1970]). In invalidating the prior statutory procedure, which did not require a court order to effect a seizure, the District Court said (p. 724): " Procedural due process requires that notice and an opportunity to be heard be provided the alleged debtor *before* his property is seized pursuant to Article 71, or at least that the creditor present to a judicial officer the circumstances allegedly justifying summary action " (emphasis in original). In its present form CPLR 7102, so far as is here relevant, provides:

" § 7102. Seizure of chattel on behalf of plaintiff.

"(a) Seizure of chattel. When the plaintiff delivers to a sheriff an affidavit, order of seizure and undertaking and, if an action to recover a chattel has not been commenced, a summons and complaint, he shall seize the chattel in accordance with the provisions of the order and without delay.

"(b) Service. The sheriff shall serve upon the person from whose possession the chattel is seized a copy of the affidavit, order of seizure and undertaking delivered to him by the plaintiff. Unless the order of seizure provides otherwise, the papers delivered to him by the plaintiff, shall be personally served by the sheriff on each defendant not in default in the same manner as a summons or as provided in section 314; if a defendant has appeared he shall be served in the manner provided for service of papers generally. * * *

"(d) Order of seizure. 1. Upon presentation of the affidavit and undertaking and upon such terms as may be required to conform to the due process of law requirements of the fourteenth amendment to the constitution of the United States, the court shall grant an order directing the sheriff of any county where the chattel is found to seize the chattel described in the affidavit ".

Subdivisions (a) and (b) would indicate that a defendant might be first made aware of a plaintiff's complaint at the

very moment of the seizure. Clearly, such procedure would not give a defendant, as was said in *Laprease* (*supra*, p. 724), "an opportunity to be heard * * * *before* his property is seized," but it would compel the plaintiff to "present to a judicial officer the circumstances allegedly justifying summary action," which would satisfy "procedural due process" requirements.

After section 7102 was adopted to meet the conditions set forth in *Laprease*, the Supreme Court of the United States in *Fuentes* v. *Shevin* (407 U. S. 67 [June 12, 1972]) ruled that statutes such as those in Pennsylvania and Florida upon which it was passing and which permitted a seizure of chattels, *without* affording the possessor of the chattels a prior opportunity to be heard, did not comply with the due process provisions of the United States Constitution. Hence the defendants argue that under *Fuentes* the present CPLR 7102 is void for lack of due process requirements. Their arguments would compel acceptance if reliance were to be placed solely on the provisions of subdivisions (a) and (b), for, as the court said in *Fuentes* (pp. 80–81):

"The issue is whether procedural due process in the context of these cases requires an opportunity for a hearing *before* the State authorizes its agents to seize property in the possession of a person upon the application of another.

"The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment — to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party. So viewed, the prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference. See *Lynch* v. *Household Finance Corp.*, 405 U. S. 538, 552."

However, in construing a statute, all of its provisions must be considered as a whole, with a reconciliation, if possible, of any apparently conflicting parts. See section 97 of Book 1 (Statutes) of McKinney's Consolidated Laws of New York, which declares: "It is a fundamental rule of statutory con-

struction that a statute or legislative act is to be construed as a whole, and that all parts of an act are to be read and construed together to determine the legislative intent. So, in construing a statute the court must take the entire act into consideration, or look to the act as a whole, and all sections of a law must be read together to determine its fair meaning.''

Furthermore, '' we are also obliged to construe statutes so as to avoid constitutional doubts '' (*People* v. *Lo Cicero*, 14 N Y 2d 374, 378). (See, also, *People* v. *Heller*, 33 N Y 2d 314; *Miller* v. *California*, 413 U. S. 15; *Adler* v. *Board of Educ. of City of N. Y.*, 301 N. Y. 476, affd. 342 U. S. 485, 496.)

In this case that reconciliation can be accomplished, and the constitutionality of the statute maintained, by reading subdivisions (a) and (b) together with paragraph 1 of subdivision (d), which provides that the due process requirements of the Constitution must be met before an order of seizure issues.[4]

The real question here, therefore, is not the constitutionality of the statute but whether the defendants received due process when the plaintiff's application for an order of seizure was determined without the taking of testimony in open court. Under the facts in this record we answer that question in the affirmative, for as the court in *Fuentes* said (pp. 96–97): '' We do not question the power of a State to seize goods before a final judgment in order to protect the security interests of creditors so long as those creditors have tested their claim to the goods through the process of a fair hearing. *The nature and form of such prior hearings, moreover, are legitimately open to many potential variations and are a subject, at this point, for legislation — not adjudication.* Since the essential reason for the requirement of a prior hearing is to prevent unfair and mistaken deprivations of property, however, it is axiomatic that the hearing must provide a real test. ' [D]ue process is afforded only by the kinds of '' notice '' and '' hearing '' that are aimed at establishing the validity, or at least the probable validity, of the underlying claim*

4. The 1971 supplementary practice commentary on section 7102 in Book 7B of McKinney's Consolidated Laws of New York properly criticizes the section's draftsmanship when it states: '' The recent amendment to this section is obviously an attempt to reconstruct the replevin procedure to comply with the Laprease holding. Although the Governor perceived 'serious deficiencies' in the draftsmanship of the new legislation, he signed it nonetheless. The cardinal flaw in the new legislation is its Olympian generality, for it says little other than that a judge may sign an order permitting the seizure of a chattel whenever it would be constitutional to do so. No criteria are set forth to guide the judge in making this determination.''

against the alleged debtor *before* he can be deprived of his property'" (emphasis supplied).

Here, the defendants were permitted to submit lengthy affidavits in opposition to the plaintiff's motion and were heard in oral argument by the Special Term. They thus were afforded due process because, as just above quoted from *Fuentes* (p. 97), they had the kind of notice and hearing "aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor *before* he can be deprived of his property". See, also, *Blye v. Globe-Wernicke Realty Co.* (33 N Y 2d 15, 22) where, in dealing with the same subject matter in an innkeeper's lien case, the court said: "All that is necessary is that the fundamentals of due process be observed. This imports that, absent extraordinary circumstances, the guest be afforded notice and the *opportunity* to be heard before being deprived of the possessions of his property" (emphasis in original).

It should be noted that the record discloses no request by the defendants that they be permitted to examine or cross-examine the plaintiff's witnesses. We do not doubt that out of a super-abundance of caution the Special Term would have ordered such a hearing to make certain that its procedures conformed "to the due process of law requirements of the fourteenth amendment to the constitution of the United States," as specified in paragraph 1 of subdivision (d) of CPLR 7102, if a request therefor had been made.

The next issue raised by the defendants concerns the meaning and effect of the following phraseology found in the plaintiff's financing statement: "5. This Financing Statement covers the following types (or items) of property: all motor vehicles & attachments now owned or hereafter acquired. (x) Proceeds". They urge that the plaintiff, by reserving to itself a lien on the "proceeds" of the sale, waived its secured interest in the chattels and authorized sale of the chattels free and clear of any liens.

The defendants' argument in this regard is premised on the fact that, although they did not search the appropriate records to see if the chattels were subject to a security interest, because of the debtor's representation that they were free and clear, had they done so and "learned plaintiff had an alleged lien interest in the vehicles, it would not have been warned against buying or forbidden to buy" [*sic*], because by the express terms of subdivision (2) of section 9–306 of the Uniform Commercial Code, a secured party may consent to a

sale of the goods covered by the security interest and look to the proceeds of the sale.

In answer to that contention the Special Term said: " The fact that it was noted in the financing statement that it covered ' Proceeds ' does not mean that the secured party consented to the sale of the collateral. That a security interest covers ' proceeds ' merely means that the proceeds of a sale of the collateral may be reached in addition to the collateral (see U.C.C., Sec. 9–306, subd. 2)."

We do not agree with the Special Term's conclusion.[5] In *Hempstead Bank* v. *Andy's Car Rental System* (35 A D 2d 35, 39–40) a similar situation was involved and this court there said: " Apart from the provisions of section 9–307, however, a secured party may lose his security interest in the collateral upon a sale thereof by the debtor if the debtor's action ' was authorized by the secured party in the security agreement *or otherwise* ' [emphasis added] (U. C. C., § 9–306, subd. [2]); and ' a claim to proceeds in a filed financing statement might be considered as impliedly authorizing sale or other disposition of the collateral, depending upon the circumstances of the parties, the nature of the collateral, the course of dealing of the parties and the usage of trade (see Section 1–205)' (Official Comment to U. C. C., § 9–306 [McKinney's Cons. Laws of N. Y., Book 62½, Part 3, p. 485])."

Subdivision (2) of section 9–306, to which reference was made in that case, reads: " Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement *or otherwise*, and also continues in any identifiable proceeds including collections received by the debtor " (emphasis supplied).

Since there is a serious factual question in this case as to whether, by reason of its prior dealings, etc., with the

---

5. The Special Term, in reaching its conclusion, probably relied on paragraph 3 of the 1972 Official Comment of the National Conference of Commissioners on Uniform State Laws and the American Law Institute to revised section 9–306, which paragraph states in part: " The right to proceeds, either under the rules of this section or under specific mention thereof in a security agreement or financing statement does not in itself constitute an authorization of sale." That section has not yet been adopted in New York. Paragraph 3 of the Official Comment to our present section 9–306 reads in part as follows: " A claim to proceeds in a filed financing statement *might* be considered as impliedly authorizing sale or other disposition of the collateral, *depending* upon the circumstances of the parties, the nature of the collateral, the course of dealing of the parties and the usage of trade " (emphasis supplied).

debtor, the plaintiff authorized it to sell the chattels free of any liens when it (the plaintiff) asserted its right to receive the "proceeds" if the chattels were sold, and since it appears from the record that the defendants might well be crippled in their business if the chattels were to be seized in advance of a determination of that issue, the order of seizure was improvidently made and may not stand.

In passing, we note that in any event the Dorsey semi-trailer should not have been included in the order of seizure, since it was not one of the chattels mentioned in Schedule A annexed to the security agreement. We do not interpret the general language in the after-acquired property clause of the security agreement to cover vehicles other than those therein specifically enumerated, unless they were given and accepted in replacement of specified vehicles. (See Uniform Commercial Code, §§ 9–110, 9–203, subd. [1], par. [b]; *Matter of Laminated Veneers Co.*, 471 F. 2d 1124, 1125; but, see, contra, J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code 789 [1972].)

In view of the fact that we are here dealing with chattels which by their very nature are subject to daily damage or destruction (in addition to their constantly depreciating value), we direct an immediate trial of this action and we continue that portion of the order appealed from which restrains the defendants "until further order of this Court, from transferring, selling, pledging, assigning or otherwise disposing of said chattels or any portion thereof or permitting them to become subject to a security interest or lien" so far as it refers to the chattels mentioned in Schedule A, that is, excluding the Dorsey semi-trailer. As thus modified, the order appealed from should be affirmed, without costs.

GULOTTA, P. J., HOPKINS, MARTUSCELLO and COHALAN, JJ., concur.

Order modified (1) by striking therefrom the first two decretal paragraphs and substituting therefor a provision denying the motion, (2) by adding thereto a provision directing that trial of the action proceed immediately and (3) by inserting in the third decretal paragraph, which restrains defendants "from transferring * * * or otherwise disposing of said chattels," immediately after the words "said chattels", the following: "but only the chattels set forth in Schedule A of the financing statement in question, that is, excluding the Dorsey semi-trailer." As so modified, order affirmed, without costs.