Louis Wallace:, J.
In this action to foreclose a consolidated building loan mortgage, the defendant property owner challenges both the ex parte appointment of a receiver and the right of the plaintiff to have a receiver appointed on notice. The basic facts are not disputed. The defendant, Village Mall at Hillcrest, Inc., is the owner of a large parcel of real property located in this county. The plaintiff is the lead-lender on a construction loan in the amount of $16,000,000 secured by a consolidated mortgage dated June 28, 1972, which was subsequently modified by written agreement dated January 14, 1974. The maturity *1062 date of the mortgage was June 28, 1974, at which time the plaintiff had advanced a total of $15,152,196. A sum slightly in excess of $10 million has been repaid and there is now due and owing the sum of $4,814,521 plus interest from June 1,1974.
Paragraph 12 of the mortgage provided ‘ ‘ That the Mortgagee, in any action to foreclose this Mortgage, shall be entitled to the appointment of a receiver ’ and paragraph 28 provided ‘ ‘ That the clauses and covenants contained herein which are construed by Section 254 and 291-f of the Real Property Law of New York (excluding subdivision 4 of said section 254 as provided herein) shall be construed as provided in those sections.”
Originally, it was planned to construct residential apartments together with a parking lot and a commercial building on the site. The commercial building, however, although part of the premises secured by the mortgage was built with funds other than those advanced by the plaintiff. The modification dated January 14, 1974 permitted the defendant to convert the two residential buildings into condominiums.
The project has been substantially completed. Of the 458 condominium units which have been constructed, 284 have been sold and another 46 have been placed under contract but not yet closed. Those units which have been sold have been released from the mortgage lien and are not directly affected by this action. Apparently, at least partially due to the softness in the market for these types of condominium units, the defendant has been unable to sell the remaining units. Thus, a cash flow problem has resulted causing the defendant to default in repaying the balance due under the mortgage and, also, causing the filing of approximately $2,500,000 in mechanics’ liens. The defendant indicates that it will vigorously defend the action on the ground that the plaintiff defaulted in its obligation to lend the full $16,000,000 provided for in the mortgage prior to the maturity date, refused to release certain escrow funds and refused to release from the mortgage the commercial building which was built with the defendant’s own funds. The defendant also will contend that the plaintiff, which is a participant in a “ stand-by commitment ” for a permanent loan, has caused the lead-lender thereof to default on its obligations.
It appears that due to complaints by some of the present owners of the condominium units and others the Attorney-General and the consumer protection agency of New York City have met with mechanics ’ lienors, the plaintiff and the defendant in order to arrive at a satisfactory supplemental agreement that would permit the completion of this project but that such meet *1063 ings were unsuccessful. The Attorney-General has now directed that sales of the remaining units be suspended until a new condominium offer reflecting the present status has been filed.
The court has set forth these facts at length since this action, which the parties claim to be the first foreclosure of a condominium in New York State, presents unique problems relating to the management of the property pendente lite, the availability of a receiver and the powers and duties of the receiver.
On October 23, 1974, based on an examination of the summons and complaint and an affidavit of Celina Rabal, the vice-president of the plaintiff, this court per Mr. Justice Cabiello signed an ex parte order appointing a receiver for the benefit of the plaintiff of the rents and profits issuing from the mortgaged premises. The order entered provided for a $300,000 bond, which was filed on October 30, 1974. In addition to the usual provisions for the collection of rents by the receiver, the order contained provisions granting the receiver the authority to sell the remaining condominium units; to make repairs for the preservation of the property up to $15,000 in value; to apply to the court for authorization to borrow money to finance the operation and control of the premises; to employ a designated managing agent for the premises; to pay all taxes, assessments and other lawful charges against the property; and to keep the premises insured against loss or damage by fire.
The defendant promptly moved to vacate the order on the ground that the statutes permitting its ex parte issuance are unconstitutional under the Fourteenth Amendment of the United States Constitution; that the granting of a temporary receivership is discretionary and should be made only on notice and that there should be no receiver in the interests of justice.
The plaintiff then moved that in the event the ex parte appointment is vacated an order be granted appointing the same individual as receiver with the same powers and duties specified in the ex parte order and with the additional provision that he be empowered to collect the monthly common charges due from all present owners of condominium units and apply the same to current operating expenses, and to maintain said funds in a separate account not to be commingled with receiver’s other funds.
Both motions came on for argument on the same day. The court initially restricted argument to the plaintiff’s motion but after considering the papers directed that the parties submit affidavits and such other papers as they were advised on all issues relating to both motions.
*1064 The defendant’s constitutional argument is based on the recent series of Federal court cases involving the attachment statutes of this and other States. (See Sugar v. Curtis Circulation Co., 74 Civ. 78 [Dist. Ct., S.D.N.Y.].)
The court finds that the issuance of the ex parte order was not constitutionally defective. Plaintiff as the holder of a mortgage has an interest in the real property. The receivership was a judicial act based on documentary evidence and an affidavit demonstrating the existence of legal grounds and practical necessity. A substantial bond was required to be filed. Under CPLR 6405 the defendant was entitled to move immediately to vacate the receivership, and under CPLR 6401 (subd. [b]) to limit his powers; finally, the defendant, which was represented by able counsel dealing at arm’s length with the plaintiff, agreed to the appointment of a receiver in the event of a foreclosure action and that the interpretation of such clause in section 254 of the Real Property Law would be effective. That section provides that a covenant providing for the appointment of a receiver must be construed as meaning the plaintiff is entitled to an ex parte appointment. Moreover, even if the appointment of a receiver ex parte was constitutionally defective, that defect was cured in this case by the subsequent motion and the opportunity the court afforded the parties to be heard fully on the issues.
This leaves for consideration the question whether the receivership should be allowed to continue or be discharged in the exercise of the court’s discretion, or whether there should be any limitation .or extension of the receiver’s powers.
Without a doubt, the present situation regarding this project •is precarious. Over $4,000,000 is unpaid on the building mortgage and $2,500,000 in mechanics’ liens have been filed. Certain immediate repairs are necessary for the preservation of the structures not only for the benefit of the plaintiff, the defendant and the lienors, but also for the benefit of the 284 owners of the condominium units which have already been sold. Whatever the cause of the problem, be it bad management on the part of the defendant, breach of contract or tortious interference of the contract by the plaintiff, the general economic conditions of the country and the city, or a combination of these factors, or some other factors, there should be some solution which would prevent further deterioration. The Legislature, in its wisdom in creating this newest form of property ownership, had not contemplated the possibility that after a substantial number of condominium units had been sold, a foreclosure action would be *1065 brought against the sponsor’s interests in the remaining units. It is clear that some remedial legislation is needed, perhaps authority for the court to ¡appoint the Attorney-General the temporary receiver and temporary manager of a condominium pending the disposition of all liens and the sale of all units.
At present, it appears that title to 284 units has closed free of the mortgage liens evolved in this lawsuit. The owners of these units have property rights in the common elements which include certain rentable professional and commercial space, the income of which is to be used to partially offset the monthly carrying charges of each unit. These property rights are also free of the plaintiff’s mortgage lien. The latter would seem to apply only to the unsold units and the interests such unsold units have in the common elements and to any part of the site which was not offered as part of the condominium. The operation of the condominium is the responsibility of the board of managers. Neither the sponsor as a corporate entity nor any purchaser of the sponsor’s remaining interest at & foreclosure sale would have any right to operate the project, such operation being and remaining with the board of managers. It is true that the initial board was ¡composed of individuals selected by the corporate sponsor, who were in fact its principals, but under the terms of the offering a new board elected by the unit owners must take over operation no later than one year after the filing of the declaration, which period has just expired or is about to expire. Any receiver appointed by the court would have no right to collect rents from the professional or commercial space in the condominium buildings, to undertake repairs to the common areas, pay taxes thereon or perform any of the functions a receiver normally performs since :the receiver’s powers cannot exceed those of the defendant. The unsold units, of course, may be assessed by the board for common charges and may be credited with a pro rata share of the income from the professional and commercial areas, but it is doubtful that there will be any surplus moneys to be turned over to the receiver. At some point a determination will have to be made as to the relative priority of the various mortgage and mechanic’s liens vis-a-vis the statutory liens of the condominium against the unsold units for assessments and common charges.
The court is aware that the plaintiff has filed an affidavit by an attorney purporting to represent a large number of the unit owners in which the attorney joins in the plaintiff’s motion, but this affidavit does not identify the owners who have retained the attorney and does not indicate that he or his clients are aware *1066 of the property rights that might he affected by the granting of the plaintiff’s motion in full. Moreover, since neither the property owners nor the board of managers of the condominium are parties to this action, they would not be bound by any determination in this action. In addition, since the Condominium Act (Real Property Law, art. 9-B) places the authority and responsibility for the management of the condominium in the board of managers, it is doubtful that the unit owners as individuals could legally consent to giving the receiver the broad powers requested by the plaintiff.
There is a further complication in that the offering indicates that the board of managers is already under a management contract with a separate corporation owned by the principals of the sponsor. It is possible that the board of managers might seek to rescind that contract or be relieved from it in some other way, but the court cannot now make any determination of that issue or even know whether it will, in fact, be raised.
The court finds that on the basis of the present papers it has no legal authority to grant the receiver the power to take over the management of the condominium. For the present we make no determination .as to the right .of the board of managers to contract with the receiver to take over that function. The present order also purports to give the receiver the authority to séll the remaining condominium units. As was aptly stated in Carmody-Wait, New York Practice (vol. 13, § 49, p. 440): “ The provisional or pendente lite receiver has no title to the property for which the receivership has been ordered. The function of a provisional receiver is to conserve the property, pending litigation; he is not charged with liquidating the property and distributing it. among creditors, thus there is normally no occasion for him to .sell assets in his possession, and, though a proper case be made out for the appointment of a provisional receiver, the order therefor should not direct the sale of the property if it is of a nonperishable nature.” The court finds no reason to deviate from that general rule.
The court is aware that the foregoing discussion has raised more questions than it has answered and that there is no clear-cut procedure available to resolve the various legal and practical problems existing, both within and without the instant lawsuit. The parties, and others interested in the project, are in a very real sense pioneers who have chosen a novel form of investment and have undertaken risks that frequently come when dealing with the unknown. The court will co-operate with the *1067 parties in any reasonable attempt to minimize the effect of this situation.
Accordingly, the motions are granted to the following extent, and in all other respects are denied.
1. The receiver named in the ex parte order is continued as such.
2. With respect to those portions of the real property encumbered by the plaintiff’s mortgage which are not part of the condominium offering, the receiver shall have all the usual powers and duties to lease, manage and make repairs not in excess of the amount of $15,000.
3. With respect to the unsold apartment units, the receiver on notice to all parties may apply to the court to lease all or part of the same. If such motions are made, they .should be supported by all facts necessary to a proper determination by the court.
4. Any income collected by the receiver shall be held in the bank specified in the original order pending the further order of this court, except that the receiver may pay any assessments levied by the board of managers on the unsold units for such units’ pro rata .share (as defined in the offering) of real estate taxes, insurance premiums, emergency repairs and security.
5. The receiver shall be authorized to employ counsel to institute and prosecute all legal proceedings necessary for the proper care and protection of that portion of the premises subject to his receivership, and, also, to represent the receiver in any further proceedings in this court relating to the receivership or this action.
6. The receiver is authorized to employ the managing agent specified in the original order but such management shall be limited to those portions of the premises not subject to the condominium offering.
7. The receiver may co-operate in any legal manner with the board of managers of the condominium so as to assist the board in the performance of its obligations to manage the condominium, including common elements thereof.
8. The receiver shall have no power to sell any of the unsold condominium units.
9. The plaintiff is directed to join the board of managers of the condominium and the managing agent specified in the condominium offering as parties to this action.
10. It is suggested that the parties and the receiver attempt to reach some agreement as to a plan for the management of the *1068 property pending the determination of the action, as well as to the sale or lease of the unsold units. An application may be made to the court at any time to approve such a plan. Moreover, if agreement as to a plan cannot be reached, then any party or the receiver may apply to the court on notice and on sufficient papers to have the court devise and implement such a plan.
11. The receiver is given leave to apply on notice at any time to the court for further or additional instructions and powers.