CITY PARTNERS, LTD. BMG, a Florida Limited Partnership, by its General Partner, City Equities Corp., a Florida Corporation, Plaintiff,

v.

JAMAICA SAVINGS BANK, Carol Management Company, Pasquale A. Simone, Louis J. Lefkowitz, as Attorney General of the State of New York, Adam A. Balzer and Ronald C. Spielberger, Defendants.

No. 77 C 2399.

United States District Court,
E. D. New York.

July 13, 1978.

Goldschmidt, Fredericks, Levinson & Oshatz, New York City (Barry I. Fredericks, Edward Sussman, Robert A. Faller, of counsel), for plaintiff.

Robinson, Silverman, Pearce, Aronsohn, Sand & Berman, New York City (Leonard B. Sand, Floran L. Fink, and Robert A. Wolf, New York City, of counsel), for defendants Jamaica Savings Bank, Balzer and Spielberger.

Finley, Kumble, Wagner, Heine & Underberg, New York City (Donald S. Snider, New York City, of counsel), for defendant Carol Management Co.

Gerry E. Feinberg, Deputy Asst. Atty. Gen., for defendant Lefkowitz.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff, a limited partnership, brought this action seeking damages and a declaratory judgment and alleging eleven causes of action said to arise out of events in connection with the bringing of a leasehold mortgage foreclosure action by defendant Jamaica Savings Bank ("the Bank"). Jurisdiction is allegedly based on 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship), and 1343 (civil rights); 42 U.S.C. § 1983; and the Fifth and Fourteenth Amendment to the United States Constitution. Various defendants have moved pursuant to Rule 12(b)(6) and (1) of the Federal Rules of Civil Procedure to dismiss the causes of action either for failure to state a claim or for lack of subject matter jurisdiction.

Plaintiff holds the tenant's interest in a ground lease of certain property in Queens, New York known as Heather Gardens. According to the complaint, Heather Gardens consists of four different apartment complexes. Plaintiff's leasehold interest in one of those complexes, Alley Apartments, is subject to a mortgage held by the Bank. The mortgage agreement, entered into by the Bank and plaintiff's predecessor in the leasehold interest, provided for acceleration by the Bank of the debt secured by the mortgage in the event of default, and further provided that in an action to foreclose the Bank would be entitled to appointment of a receiver.

On October 31, 1977 the Bank commenced an action to foreclose on the mortgage in New York Supreme Court, Queens County. Plaintiff claims that it was not then in default. That same day one of the Bank's attorneys submitted *ex parte* an affirmation to the court alleging plaintiff's default and requesting appointment of a receiver. On November 2, 1977, Justice Joseph Calabretta appointed defendant Simone as receiver and authorized him to employ defendant Carol Management Co. ("Carol Management") to rent and collect rents of the mortgaged premises. Plaintiff claims that it received no notice of the Bank's application for a receiver, that Justice Calabretta's order made no provision for service upon plaintiff, and that plaintiff was never served with any process in the foreclosure action.

Upon his appointment Simone retained the services of defendant Carol Management as agent. Plaintiff alleges that Simone and Carol Management have failed to confine their activities to the Alley Apartments and that they have entered other premises controlled by plaintiff not subject to the mortgage and ordered tenants of those premises to pay rent to them rather than to the plaintiff.

After the filing of the instant motion the action was dismissed by stipulation as against defendants Lewis, Goldberg, Kaskel and Wentworth. The ninth cause of action was asserted solely against these four, and thus that cause of action is not before the court. Plaintiff's remaining ten claims seek the following relief: (1) a judgment declaring that the provisions of New York law authorizing *ex parte* applications for appointment or a receiver violate the Due Process clause of the Fourteenth Amendment; (2) damages pursuant to 42 U.S.C. § 1983 from the Bank for applying *ex parte* for the appointment of a receiver and for making false or inadequate assertions in support of that application; (3–6) damages from the Bank, Simone, and Carol Management for their alleged activities with respect to plaintiff's premises allegedly not subject to the mortgage; (7) damages from the Bank for breach of the mortgage agreement; (8) damages from defendants Balzer and Spielberger, officers and trustees of the Bank, for their alleged approval of commencement of the foreclosure action and for Spielberger's alleged failure to advise Simone and Carol Management of the limitations of their power with respect to plaintiff's other premises; (10) damages for an alleged conspiracy among all the defendants to deprive plaintiff of its rights; and (11) punitive damages.

## I

Defendants urge the court to abstain from exercising jurisdiction over the claim for a declaratory judgment concerning the New York statutes authorizing *ex parte* appointment of a receiver.

None of the agreements between plaintiff or its predecessor and the Bank explicitly authorizes it to make an *ex parte* application for appointment of a receiver. The agreements state only that the Bank "shall be entitled", in any action to foreclose, to the appointment of a receiver. However, § 254(10) of the New York Real Property Law recites that a covenant in a mortgage that the holder in any action to foreclose " 'shall be entitled to the appointment of a receiver,' must be construed as meaning" that the holder "shall be entitled, without notice and without regard to adequacy of any security of the debt, to the appointment" of a receiver.

Defendants claim that by agreeing to a covenant providing for receivership the plaintiff had at least constructive notice of the applicability of § 254(10) and therefore waived notice of the motion for a receivership; alternatively, they claim that even absent such waiver the *ex parte* procedure established by § 254(10) is not unconstitutional.

The judicially-created doctrine of abstention includes two parallel concepts addressed to different aspects of the relationship between the federal and state judiciary.

"The first, usually referred to as [*Railroad Comm'n v.*] *Pullman* [*Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)] abstention, involves an inquiry focused on the possibility that the state courts may interpret a challenged state statute so as to eliminate or at least to alter materially, the constitutional question presented. The second type is *Younger* [*v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)] abstention, in which the court is primarily concerned, in an equitable setting, with considerations of comity and federalism, both as they relate to the State's interest in pursuing an on-going state proceeding, and as they involve the ability of the state courts to consider federal constitutional claims in that context." *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 477, 97 S.Ct. 1898, 1902–03, 52 L.Ed.2d 513 (1977) (citations omitted).

This court is of the opinion that *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), should not apply in this case. There the Supreme Court reversed the order of a three-judge district court enjoining the District Attorney of Los Angeles County from prosecuting appellee Harris for violating California's Criminal Syndicalism Act, the district court having held the Act unconstitutionally vague and overbroad. The Supreme Court ruled that enjoining the pending criminal proceeding would offend

> "the notion of 'comity', that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. . . . What the concept does represent is a system in which there is a sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States."
> *Id.* at 44, 91 S.Ct. at 750.

The notions of federalism expressed in the *Younger* case have the effect of adding an extra dimension to "the two classic preconditions for the exercise of equity jurisdiction," i. e. an inadequate remedy at law and irreparable injury. *Trainor v. Hernandez,* 431 U.S. 434, 441, 97 S.Ct. 1911, 1917, 52 L.Ed.2d 486 (1977). Absent "extraordinary circumstances", the *Younger* opinion requires that federal courts decline to exercise jurisdiction which would enjoin pending state criminal proceedings. *Younger v. Harris, supra,* at 53–54, 91 S.Ct. 746.

Since the *Younger* case, the Supreme Court has extended the abstention doctrine to applications for declaratory as well as injunctive relief [*Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *Samuels v. Mackell,* 401 U.S. 66, 91

S.Ct. 764, 27 L.Ed.2d 688 (1971)] and applied the doctrine to a variety of non-criminal proceedings in which a state was asserting a significant state policy. *Trainor v. Hernandez, supra* (civil suit brought by state to recover public assistance moneys allegedly paid wrongfully); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (state contempt proceedings against a party to a private civil suit who failed to respond to a subpoena); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (state proceeding to close down a business as a nuisance).

The Supreme Court has not, however, gone so far as to require *Younger* abstention from interference with a state proceeding which is purely private, and the opinions in the *Trainor* case indicate that the abstention doctrine does not apply in that setting. In that case the Court, in a 5–4 decision, reversed a judgment holding unconstitutional the Illinois statutory procedures for prejudgment attachment of property. A state agency had sued plaintiffs in state court for return of public assistance moneys obtained by fraud. The state agency had also secured an order of attachment which was levied on plaintiffs' credit union funds. Although the attachment procedure was available to any civil litigant in Illinois, the Supreme Court held that the district court's refusal to abstain was error since in the particular state proceeding

> "the State was a party to the suit in its role of administering its public assistance programs. Both the suit and the accompanying writ of garnishment were brought to vindicate important state policies such as safeguarding the fiscal integrity of those programs. . . . [T]he principles of *Younger* and *Huffman* [*v. Pursue, Ltd., supra*] are broad enough to apply to interference by a federal court with *an ongoing civil enforcement action* such as this, *brought by the State in its sovereign capacity.*" 431 U.S. at 444, 97 S.Ct. at 1918 (emphasis supplied).

While the court expressly stated it was not deciding "whether *Younger* principles apply to all civil litigation", 431 U.S. at 445

n. 8, 97 S.Ct. at 1919, Mr. Justice Blackmun, one of the five Justices concurring in the majority opinion, wrote a separate concurrence "only to stress that the substantiality of the State's interest in its proceeding has been an important factor in abstention cases . . . from the beginning." A reading of Mr. Justice Blackmun's opinion and the opinions of the four dissenters leads to the conclusion that absent a substantial state interest in the pending state proceeding, *Younger* abstention would be inappropriate.

In the instant case, none of the defendants, including the Attorney General of the State of New York, has identified any state interest, substantial or otherwise, in the mortgage foreclosure action brought by the Bank against the plaintiff in state court. The State and City of New York did not commence the state court action; indeed, the Bank named them as defendants to foreclose any tax liens against the leasehold interest which arose subsequent to the foreclosure of the mortgage. Since no state interest is implicated in the state proceeding, the *Younger* case and those that follow it do not require this court to abstain from deciding the issue presented by the claim for declaratory relief.

Nor should the court in its discretion decline, as defendants urge, to entertain that claim merely because plaintiff could have mounted a constitutional attack on New York's receivership laws in the state foreclosure proceeding. The state forum was chosen by the Bank. It is not a prerequisite to bringing any action under 42 U.S.C. § 1983 that plaintiff exhaust its state remedies. See, *e. g., Mitchum v. Foster,* 407 U.S. 225, 242, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); cf. *Colorado River Water Conser. Dist. v. United States,* 424 U.S. 800, 812–20, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

However, this court is required under *Pullman Co. v. Railroad Commission,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), to stay its hand until the state courts have had an opportunity to construe the New York statutes to eliminate or alter materially the Federal constitutional question. In

*Sugar v. Curtis Circulation Co.,* 377 F.Supp. 1055 (S.D.N.Y.1974), for example, the District Court granted plaintiff's motion to convene a three-judge court to consider the constitutionality of New York's pre-judgment attachment procedures. The three-judge court held the procedures unconstitutional. 383 F.Supp. 643 (S.D.N.Y.1974). On appeal, the Supreme Court vacated the judgment and in a *per curiam* opinion held that *Pullman*-type abstention was appropriate to give the state courts an opportunity to construe the New York statutes so as to preserve their constitutionality in view of the several Supreme Court decisions concerning pre-judgment seizures. *Carey v. Sugar,* 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976).

The Supreme Court's opinion in the *Sugar* case indicates that where a construction "consistent with the constitutional standard is by no means automatically precluded" the federal courts should abstain from a constitutional decision until such a construction is sought in a state court. *Id.* at 78, 96 S.Ct. at 1210. The New York courts have been responsive to the constitutional implications of pre-judgment remedies. See cases cited in *Carey v. Sugar,* 425 U.S. at 78, 96 S.Ct. 1208. Since New York courts consider themselves " 'obliged to construe statutes so as to avoid constitutional doubts' ", *Long Island Trust Co. v. Porta Aluminum Corp.,* 44 A.D.2d 118, 123, 354 N.Y.S.2d 134, 139 (2d Dept. 1974), this court should accord an opportunity to New York to construe its receivership laws before passing on their constitutionality.

*Pullman*-type abstention is appropriate here because a judgment as to the constitutionality of the challenged procedure will require an inquiry into, and may well turn upon, the nature of the relief which New York affords a party subjected to an *ex parte* order or receivership. *Ex parte* provisional remedies are not necessarily unconstitutional simply by reason of their availability without notice. *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). Where, as in the sequestration procedure involved in the

*Mitchell* case and the receivership procedure here, the original order granting the remedy is issued by a court, the nature of the procedure for relief from the remedy is likely to be determinative of the constitutional claim. *Carey v. Sugar, supra; North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 613, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (Powell, J., concurring).

In this case the parties have not cited, and the court has not found, any definitive New York holding describing the nature of the remedies to vacate a receivership. The New York courts may well construe New York law to make available a remedy which is compatible with due process. Indeed, one New York court on a motion to vacate an *ex parte* order appointing a receiver afforded the parties an opportunity "to be heard fully on the issues." *Security Nat. Bank v. Village Mall at Hillcrest,* 79 Misc.2d 1060, 361 N.Y.S.2d 977 (Sup.Ct. Queens County 1974). Arguably this would meet the constitutional standard which the Supreme Court suggested in the *Sugar* case, i. e., a preliminary inquiry into the merits of the underlying claim. Under the circumstances a decision on the constitutionality of the *ex parte* procedure should await a New York court's construction of the pertinent New York law.

Plaintiff argues that abstention is inappropriate since there is no longer a pending state proceeding in which it may test the receivership statutes. Plaintiff has filed a petition under Chapter XII of the Bankruptcy Act; by operation of law the pendency of the bankruptcy proceeding has stayed further proceedings in the foreclosure action. However, plaintiff is not left without a state court forum. The statutory stay applies to "a suit which is founded upon a claim from which a discharge would be a release, and which is pending *against* [a petitioner in bankruptcy]," 11 U.S.C. § 29(a) (emphasis supplied), and would not apply to a declaratory judgment action brought by plaintiff. Moreover, plaintiff could move in the bankruptcy proceeding to vacate the stay of the foreclosure proceeding for purposes of moving to vacate the receivership.

The court therefore declines to entertain plaintiff's claim for declaratory relief. Plaintiff may, of course, return to this court for a ruling on the constitutional questions unless plaintiff elects to litigate fully those issues in the state court. *England v. Louisiana Bd. of State Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

II

Plaintiff's second claim seeks damages from the Bank for improperly applying for the *ex parte* order appointing Simone. Jurisdiction is asserted under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). The parties have thoroughly briefed the issue of whether the Bank's alleged actions are "state action" so as to constitute a claim under those statutes. The court need not decide the question since in any event no claim for relief is stated.

■ In essence, the second claim seeks damages for malicious prosecution or abuse of civil process. To justify such a claim the proceeding which is alleged to have been maliciously prosecuted must have been terminated in plaintiff's favor. *Tucker v. Maher,* 497 F.2d 1309, 1316 (2d Cir. 1974). Plaintiff has not yet successfully challenged the order of receivership. Nor, of course, has the foreclosure action been concluded. The tort, constitutional or otherwise, simply has not yet occurred. Accordingly, the second claim is insufficient.

III

The defendants have moved to dismiss plaintiff's remaining claims on the ground that there is no independent basis of subject matter jurisdiction over them and that since the court has found plaintiff's first two claims insufficient, there is no pendent jurisdiction. *United Mineworkers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ Claims third through sixth, however, may fairly be read to allege violations of 42 U.S.C. § 1983. The allegations of those claims, which must be accepted as true for

purposes of this motion, describe activities of the Bank, Simone and Carol Management with respect to plaintiff's "other premises", i. e. apartment complexes in Heather Gardens not subject to the mortgage. Denominated as claims for damages for prima facie tort, negligence, conversion, trespass, and interference with contract rights, those "causes of action" allege that Simone and the Bank, through their agent Carol Management, have seized plaintiff's books and records concerning the other premises, directed the tenants to pay rents to Simone as the purported receiver, and collected the rents.

There can be no doubt that Simone, as a court-appointed receiver, acted under color of state law. *Hohensee v. Grier,* 373 F.Supp. 1358 (M.D.Pa.1974). That plaintiff alleges Simone acted beyond his lawful authority with respect to the other premises does not make his activities any less "state action." *United States v. Classic,* 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1940). The Bank and Carol Management having been alleged to have joined with Simone in such activities they may also be held to have acted under color of state law. *Adickes v. S. H. Kress and Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), citing *United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).

Although the complaint describes claims third through sixth in terms of common law tort, the allegations can be read to describe a deprivation of property under color of state law. The first paragraph of each claim incorporates by reference earlier allegations of the complaint depicting Simone as a court-appointed receiver and Carol Management as his agent. It is true that with respect to, for example, plaintiff's second claim, the complaint explicitly recites language invoking 42 U.S.C. § 1983, whereas claims third through sixth do not. But construing them so as "to do substantial justice", Rule 8(f), Federal Rules of Civil Procedure, they state facts adequate to bring the claims within § 1983.

Defendants, relying on *Bradford Audio Corp. v. Pious,* 392 F.2d 67 (2d Cir. 1968), urge that plaintiff has suffered no constitutional injury by the acts alleged in the third through sixth claims but merely common law torts. In that case plaintiff brought action under 42 U.S.C. § 1983 challenging a court-appointed receiver's control over a bank account. The court held that plaintiff had suffered no injury to a constitutionally protected interest:

> "[T]he right sought to be enforced [in an action under 42 U.S.C. § 1983] must in the main be one incapable of pecuniary evaluation, such as personal liberty, unrelated to and not dependent upon an invasion or deprivation of property rights." 392 F.2d at 72.

Since the decision in the *Bradford Audio* case the Supreme Court has squarely rejected any distinction between "personal" and "property" rights with respect to interests protected by § 1983:

> "[T]he dichotomy between personal liberties and property rights is a false one. Property does not have rights. People have rights. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth, a 'personal' right, whether the property in question be a welfare check, a home, or a savings account. In fact, a fundamental interdependence exists between the personal right to liberty and the personal right to property. Neither could have meaning without the other." *Lynch v. Household Finance Corporation,* 405 U.S. 538, 552, 92 S.Ct. 1113, 1122, 31 L.Ed.2d 424 (1972).

The third through sixth claims allege acts by the defendants which have deprived plaintiff of full enjoyment of the benefits of the "other premises" in which it has a leasehold interest.

Plaintiff's eighth claim alleges that defendants Balzer and Spielberger, officers of the Bank, acquiesced in the Bank's application for an order of receivership and failed to prevent Simone's and Carol Management's wrongful acts with respect to the other premises. Insofar as this claim alleges the Bank's application to the state court it is insufficient. See Point II. *supra.*

However, the remainder of the claim, like claims third through sixth, alleges participation by Balzer and Spielberger in the activities of Simone and Carol Management on the other premises, and to that extent is sufficient.

The same principles apply to plaintiff's tenth claim. It is insufficient insofar as it alleges defendants' participation in making the application for appointment of the receiver but otherwise states a claim under 42 U.S.C. § 1983.

Since the court has jurisdiction under the Civil Rights Act over claims third through sixth, eighth and tenth, pendent jurisdiction may be exercised over plaintiff's state law claims, the seventh and eleventh. *United Mineworkers v. Gibbs, supra.* It is unnecessary to decide the question of whether there is diversity of citizenship.

### IV

■ Defendants seek dismissal of the claims addressed to defendants' activities on plaintiff's "other premises" on the ground that defendant Simone is immune from a suit for damages and that the immunity extends to the private defendants alleged to have acted in concert with him.

Had Simone simply adhered to the order appointing him and confined his actions to the properties which were subject to the mortgage, no doubt he would have enjoyed immunity even if the order were unconstitutional. *Bradford Audio Corporation v. Pious,* 392 F.2d 67, 72–73 (2d Cir. 1968). As a court-appointed officer doing no more and no less than carry out an order valid on its face and issued by a court having jurisdiction, he would have shared in the immunity awarded to judges. *Kermit Construction Co. v. Banco Credito y Ahorro Ponceno,* 547 F.2d 1, 2 (1st Cir. 1976, per Coffin, C.J.).

But here it is alleged that Simone did not confine himself to the matters committed to him by the order, that is, to the rents from the Alley Apartments, but undertook to act with respect to properties wholly outside both the mortgage and the order appointing him. New York courts have recognized the personal liability of a receiver for "acts or omissions outside the purview of the court's orders to the Receiver." *149 Clinton Ave. North, Inc. v. Grassi,* 51 A.D.2d 502, 382 N.Y.2d 185 (4th Dept. 1976). Such liability is consistent with New York's view that a receiver appointed by court order is an officer of the court and subject to the court's control. *Alexander v. Valumet Chocolate Co., Inc.,* 240 App.Div. 769, 266 N.Y.S. 15 (2d Dept. 1933). Thus, for example, a receiver may be held liable in conversion for holding property not subject to the receivership. *Fallon v. Egberts Woolen-Mill Co.,* 56 App.Div. 585, 67 N.Y.S. 347 (3d Dept. 1900).

The court thus concludes that Simone is not immune from liability under 42 U.S.C. § 1983 or New York law on the claims asserted against him.

### V

The first and second claims are dismissed without prejudice to the plaintiff's right to bring a new action on the grounds stated in the first claim following an adjudication in the state court. Claims eight and ten are dismissed to the extent they relate to the application for appointment of a receiver or to the assertions made in support of the application. In all other respects, the defendants' motions are denied.

So ordered.