2004 SD 43

**Ryan BALDWIN, Plaintiff and Appellant,**

v.

**CASTRO COUNTY FEEDERS I, LTD., Defendant and Appellee.**

**No. 22912.**

Supreme Court of South Dakota.

Argued Feb. 18, 2004.

Decided March 31, 2004.

Douglas R. Kettering of Kettering Law Offices, Yankton, South Dakota, Attorney for plaintiff and appellant.

Timothy R. Whalen of Whalen Law Office, P.C., Lake Andes, South Dakota, Attorney for defendant and appellee.

GILBERTSON, Chief Justice.

[¶ 1.] A South Dakota circuit court determined Castro County Feeders I, Ltd. (Castro County) had an enforceable security interest in the proceeds of a sale of seventy-eight cattle owned by Ryan Baldwin (Baldwin). Baldwin sold the cattle through Livestock Sales in Wagner, South Dakota. On appeal, Baldwin argues the circuit court erred in finding that Castro County had a security interest in the cattle, and he also disputes the circuit court's conclusion that the proceeds of the sale were subject to arbitration. We affirm the judgment of the circuit court.

## FACTS AND PROCEDURE

[¶ 2.] Both parties to this controversy reside in the State of Texas. Castro County runs a feedlot operation wherein it contracts to feed cattle placed in its lots as well as to provide the vitamins, minerals, and medicine necessary for the proper care of the cattle. Baldwin owns and operates a business specializing in the purchase and sale of cattle. As part of his business, Baldwin often placed his cattle with Castro County. Castro County would feed the livestock for a period of time and then release the cattle to Baldwin for transport and sale in Kansas. Generally, the sale proceeds were made payable to Baldwin and Castro County in order to reimburse it for the feed and related services provided to Baldwin's cattle.

[¶ 3.] Baldwin filed suit in circuit court seeking a Declaratory Judgment ordering Livestock Sales to release to him the proceeds of the sale. In response, Livestock Sales filed a motion to substitute parties and for removal of it as a defendant. Based upon stipulation of the parties, Livestock Sales was released from the action. Castro County was substituted as the only defendant in the action. Baldwin and Castro County stipulated to most of the facts in the case and agreed that only a question of law was before the court. After considering the facts, reviewing the relevant documents, and hearing argument of the parties, the circuit court found in favor of Castro County. The circuit court determined Castro County had a valid security interest in the cattle sold at Wagner. The circuit court also ruled the proceeds were subject to arbitration by the Texas Cattle Feeders Association as outlined by the Agreement executed by Baldwin and Castro County. Baldwin appeals the judgment of the circuit court and raises the following issues for our review:

1. Whether Castro County had a valid security interest in the proceeds of the sale of Baldwin's cattle.
2. Whether the proceeds of the sale were subject to arbitration in Amarillo, Texas as provided by the Cattle Feeding Agreement.

Affirmed.

## STANDARD OF REVIEW

[¶ 4.] We review the circuit court's findings of fact under the clearly erroneous standard. *City of Deadwood v. Summit, Inc.*, 2000 SD 29, ¶ 9, 607 N.W.2d 22, 25. The interpretation and application of South Dakota's statutes governing secured transactions require de novo review by this Court. *Farm Credit Services v. First State Bank*, 1998 SD 13, ¶ 6, 575 N.W.2d 250, 251. Our construction of the state's commercial code is also guided by SDCL 57A–1–102, which provides in pertinent part:

(1) This title shall be liberally construed and applied to promote its underlying purposes and policies.

(2) Underlying purposes and policies of this title are

(a) To simplify, clarify and modernize the law governing commercial transactions;

(b) To permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

(c) To make uniform the law among the various jurisdictions[.]

## ANALYSIS AND DECISION

[¶ 5.] **1. Whether Castro County had a valid security interest in the proceeds of the sale of Baldwin's cattle.**

[¶ 6.] The circuit court determined Castro County had a valid security interest in Baldwin's cattle sold in Wagner. SDCL ch. 57A–9, South Dakota's codified version of Article 9 of the Uniform Commercial Code, governs secured transactions. Generally, in order to be considered secured, a party must have a security agreement executed by a debtor granting that party a security interest in collateral. 57A–9–203; SDCL 57A–9–102(72) and (73) (defining "secured party" and "security agreement"); *see generally* SDCL 57A–9–101 through 57A–9–507; *see also Continental Grain Company v. Brandenburg*, 1998 SD 118, ¶ 15, 587 N.W.2d 196, 200. Specifically, SDCL 57A–9–203(b) lists three requirements that must be met before a security interest will be enforceable against a debtor:

Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:

(1) value has been given;

(2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and

(3) one of the following conditions is met:

(A) *the debtor has authenticated a security agreement that provides a description of the collateral* . . .

(emphasis added).[1] In this case, Castro County provided value in the form of feed and related services to the cattle in question. In fact, Castro County claims Baldwin owes it in excess of $94,000. Although Baldwin disagrees with this figure, he does not dispute that he owes Castro County some amount of money. Thus, the value-given requirement under subsection one is clearly met. In addition, since Baldwin

---

1. Subsections (c) through (i) do not apply to this controversy.

stipulated he owned the cattle placed in Castro County's feedlots and subsequently sold in South Dakota, the second requirement has been established.

■ [¶ 7.] The primary question Baldwin raises on appeal is whether the Agreement between himself and Castro County functions as a valid security agreement as required by SDCL 57A–9–203(b)(3)(A), set out above. First, Baldwin questions whether the Agreement was properly "authenticated." [2] He points out the Agreement twice refers to a "Rick Baldwin" as opposed to "Ryan Baldwin." A brief study of the document, however, shows "Ryan Baldwin" actually signed the document twice and scratched out the name "Rick" below the signature line. Furthermore, at trial Baldwin admitted he entered into the Agreement with Castro County and stipulated the document into evidence. Given these facts, we find Baldwin's argument that the Agreement was not authenticated to be without merit.

■ [¶ 8.] Second, Baldwin questions whether the Agreement provides a sufficient description of the collateral. SDCL 57A–9–108 provides in relevant part:

(a) Except as otherwise provided in subsections (c), (d), and (e), a description of personal or real property is sufficient,

whether or not it is specific, if it reasonably identifies what is described.

(b) Except as otherwise provided in subsection (d), a description of collateral reasonably identifies the collateral if it identifies the collateral by:

(1) specific listing;

(2) category;

(3) except as otherwise provided in subsection (e), a type of collateral defined in the Uniform Commercial Code;

(4) quantity;

(5) computational or allocational formula or procedure; or

(6) except as otherwise provided in subsection (c), any other method, if the identity of the collateral is objectively determinable.

(c) A description of collateral as "all the debtor's assets" or "all the debtor's personal property" or using words of similar import does not reasonably identify the collateral.[3]

In particular, Baldwin argues the Agreement insufficiently described the collateral because it gave Castro County a security interest in all cattle "being specifically located in Lot(s) # _____ at Castro County Feeders, I, Ltd., Hart, Castro County, Texas." [4] In other words, Bald-

---

2. According to SDCL 57A–9–102(7) "authenticate" means:

(A) to sign; or
(B) to execute or otherwise adopt a symbol, or encrypt or similarly process a record in whole or in part, with the present intent of the authenticating person to identify the person and adopt or accept a record.

3. Subsections (d) and (e) do not apply in this case.

4. The complete Cattle Feeding Agreement definition of "collateral" included:

[A]ll of Feeder's interest in farm products, limited to livestock, whether now owned or

hereafter created, acquired or arising; all of Feeder's feed, vitamins, minerals, and medicine; all of Feeder's contracts for the future purchase or future sale or delivery of the livestock; all of Feeder's contract rights and accounts receivable, checks, drafts, notes, general intangibles and all the sale of any of the foregoing Collateral; all right, title, and the interest of Feeder as partner, joint venturer, co-owner or otherwise with respect to any properties of the foregoing description; all of the foregoing, whether now owned or hereafter acquired; and all such Collateral being located on the real property described in Exhibit "A" and including without limitation all additions, accessions, substitutions and replacements of,

win believes the Agreement failed to sufficiently identify the cattle at issue in this case because it did not specify the feedlots in which his cattle were located. We disagree:

> The parties often adopt Code definitions to describe collateral in their security agreement. In many cases, a creditor argues that its interest in "inventory," "equipment," "general intangibles," "account," "proceeds," or such, includes the very property at issue and the debtor, bankruptcy trustee or other creditor(s) assert the contrary. Disputes of this nature should also be resolved by the Code's two-stage analysis: could the description plausibly be read to include the property claimed, and if so, did the parties so *intend*? In these cases, most courts resolve the problem solely as one of law.

4 White & Summers, *Uniform Commercial Code* § 31–3 (5th ed 2002).

[¶ 9.] To determine whether the description was sufficient, we must look to SDCL 57A–9–108. Pursuant to subsection (a), the "test" for sufficiency is whether the description (specific or not) "reasonably identifies what is described." In the instant case, the description was "livestock." This is an example of an identification of collateral by category, which is specifically permitted under 57A–9–108(b)(2). ("Except as otherwise provided in subsection (d), a description of collateral reasonably identifies the collateral if it identifies the collateral by ... (2) category[.]") Comment 2 to UCC § 9–108 states:

The purpose of requiring a description of collateral in a security agreement under Section 9–203 is evidentiary. The test of sufficiency of a description under this section, as under former Section 9–110, is that the description do the job assigned to it: make possible the identification of the collateral described. This section rejects any requirement that a description is insufficient unless it is exact and detailed (the so-called "serial number" test).

[¶ 10.] Moreover, "livestock" is included in the definition of "farm products." Therefore, even if the agreement had only provided for an interest in Baldwin's "farm products," the description would have been sufficient to include "livestock." Specifically, SDCL 57A–9–102(34) provides:

> "Farm products" means goods, other than standing timber, with respect to which the debtor is engaged in a farming operation and which are:
>
> (A) crops grown, growing, or to be grown, including:
>
> > (i) crops produced on trees, vines, and bushes; and
> >
> > (ii) aquatic goods produced in aquacultural operations;
>
> (B) livestock, born or unborn, including aquatic goods produced in aquacultural operations;
>
> (C) supplies used or produced in a farming operation; or
>
> (D) products of crops or livestock in their unmanufactured states.

(emphasis added). In *Mushitz v. First Bank of South Dakota*, 457 N.W.2d 849, 853 (S.D.1990) we held the description of "all farm machinery ... and livestock

for, or to all or any of the foregoing together with all proceeds and products of all or any of the foregoing, such livestock being specifically located in Lot(s) # _____ at Castro County Feeders, I, Ltd., Hart, Castro County, Texas. It

is expressly agreed that the Collateral is perishable in nature and is of a type requiring immediate sale to recognize the full value.
As noted above, the Lot # space was left blank in the original Agreement.

owned by [debtor]" constituted a sufficient description of the collateral. We held that such descriptions reasonably identify what they describe. *Id.*

[¶ 11.] Here, the Agreement did not attempt to give Castro County a security interest in all of Baldwin's property as prohibited by 57A–9–108(c). Although the parties did not specify a particular lot or lots, the Agreement restricted the security interest to the cattle Baldwin delivered to Castro County's feedlot complex in the city of Hart, Texas. According to the Agreement, Baldwin also granted Castro County a security interest in the sale of these cattle. We believe this description was sufficient to make the collateral objectively determinable. A reasonable reading of the Agreement gave Castro County a security interest in only those cattle of Baldwin's to which it advanced feed and related services. It was not necessary for the agreement to list each individual head of livestock to which Castro County's security interest attached. Moreover, it was also reasonable for the Agreement to leave a specific lot number blank given the fact the cattle were not usually located in one of Castro County's lots when sold.

[¶ 12.] We believe the Agreement between Baldwin and Castro County constituted an authenticated security agreement that sufficiently described the collateral as those cattle to which Castro County provided feed and related services. Baldwin stipulated he owned the cattle placed at Castro County. Castro County provided value by advancing Baldwin's cattle feed and related services. Thus, the requirements for valid security interest as defined by SDCL 57A–9–203 were met.

[¶ 13.] In this case, Baldwin delivered approximately 686 head of cattle to Castro County where they received feed and related care. By the terms of the Agreement, Castro County obtained a security interest in these cattle. Both parties agreed it was customary for Castro County to release Baldwin's cattle and then receive payment upon their sale in Kansas. When Castro County released the seventy-eight head of cattle at issue in this case, it retained a security interest in the proceeds of their sale. Here, the fact that Baldwin sold these cattle in South Dakota rather than Kansas did not change the nature of Castro County's security interest. We therefore affirm the judgment of the trial court on this issue.

[¶ 14.] **2. Whether the proceeds of the sale were subject to arbitration in Amarillo, Texas as provided by the Cattle Feeding Agreement.**

[¶ 15.] The Cattle Feeding Agreement entered into by Baldwin and Castro County provided:

**ANY DISPUTE OR CONTROVERSY ARISING UNDER, OUT OF, OR IN CONNECTION WITH OR IN RELATION TO THIS CATTLE FEEDING AGREEMENT AND ANY AMENDMENT THEREOF, OR THE BREACH THEREOF, SHALL BE DETERMINED AND SETTLED BY ARBITRATION TO BE HELD IN AMARILLO, TEXAS IN ACCORDANCE WITH THE RULES THEN APPLICABLE UNDER THE ARBITRATION PROGRAM OF THE TEXAS CATTLE FEEDERS ASSOCIATION. ANY AWARD RENDERED THEREIN SHALL BE FINAL AND BINDING ON EACH OF THE PARTIES HERETO, AND JUDGMENT MAY BE ENTERED THEREON IN THE STATE COURT OF THE STATE OF TEXAS FOR THE COUNTY OF POTTER.**

(bold and caps original). In accordance with this provision, the circuit court ordered the sale proceeds disbursed to Baldwin, Castro County, and the Texas Cattle

Feeders Association for arbitration. Baldwin believes the sale proceeds should only be disbursed to him based solely upon his argument that Castro County had no security interest in the cattle. We have already determined, however, that Castro County had a valid security interest in the cattle. The arbitration clause is a clear and unambiguous part of the contract between Baldwin and Castro County, and we affirm the judgment of the trial court that the proceeds at issue in this case are subject to arbitration by the Texas Cattle Feeders Association in Amarillo, Texas. *See Kimball Investment Land, Ltd. v. Chmela,* 2000 SD 6, ¶ 14, 604 N.W.2d 289, 293 (recognizing the general rule that courts should enforce and give effect to the unambiguous language and terms of a contract).

[¶ 16.] SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.