1998 SD 13

**FARM CREDIT SERVICES OF THE MIDLANDS, PCA, Plaintiff and Appellant,**

v.

**FIRST STATE BANK OF NEWCASTLE, WYOMING, Defendant and Appellee,**

and

**Kathleen Reynolds; and Rasmussen Motors, Defendants.**

No. 20094.

Supreme Court of South Dakota.

Considered on Briefs Jan. 14, 1998.

Decided Feb. 18, 1998.

Rehearing Denied March 30, 1998.

___

Brent A. Wilbur of May, Adam, Gerdes & Thompson, Pierre, for plaintiff and appellant.

Todd D. Hauge of Bakewell, Hauge & Vander Heide, Custer, for defendant and appellee.

SABERS, Justice

[¶ 1.]Trial court granted summary judgment to defendant bank, ruling that its unperfected purchase money security interest took priority over plaintiff creditor's unperfected security interest. We affirm.

## FACTS

[¶ 2.]During the 1990's, Chance and Neteri Reynolds (hereinafter "Debtor") obtained various loans from Farm Credit Services of the Midlands (Farm Credit) and First State Bank of Newcastle, Wyoming (Bank). On March 21, 1995, Debtor executed a security agreement in favor of Bank. The agreement specifically describes two 1995 Dodge pickup

trucks by their vehicle identification numbers. In return, Bank loaned Debtor the money for the purchase of the two trucks.

[¶ 3.]Approximately two years earlier, Debtor executed a security agreement in Farm Credit's favor, giving Farm Credit a security interest in various collateral, including accounts, livestock, equipment, and certain titled motor vehicles. Although the 1995 Dodge trucks were not described in the agreement, it stated that Farm Credit's security interest would attach to after-acquired property. Neither Bank nor Farm Credit perfected their security interests in the trucks by noting their liens on the certificates of title.

[¶ 4.]In March of 1996, Debtor defaulted on its loans with both Bank and Farm Credit. Farm Credit brought a declaratory action to determine the rights of the parties to various items of collateral. The two trucks were eventually sold at public auction by a receiver appointed by the trial court. This dispute centers upon the proper distribution of the proceeds of that sale. The trial court granted summary judgment to Bank and Farm Credit appeals.

## [¶ 5.]STANDARD OF REVIEW

[¶ 6.]This appeal requires us to examine the statutes governing secured transactions. Questions of statutory interpretation require de novo review. *Maynard v. Heeren*, 1997 SD 60, ¶ 5, 563 N.W.2d 830, 833. Since there are no factual issues in this case, summary judgment will be affirmed if the trial court correctly decided the legal issue presented. *Weiss v. Van Norman*, 1997 SD 40, ¶ 9, 562 N.W.2d 113, 115 (citations omitted).

## [¶ 7.]WHETHER FARM CREDIT'S SECURITY INTEREST ATTACHED TO THESE TRUCKS.

[¶ 8.]The parties concede that neither perfected their security interests in the trucks by placing a lien on the titles in accordance with SDCL 32–3–38. A lien on a motor vehicle is not valid against subsequent lien holders or claimants in the absence of a notation of the lien on the certificate of title.

SDCL 32–3–41;[1] *see also* SDCL 57A–9–302(3)(b) & (4):

> (3) The filing of a financing statement otherwise required by this chapter is not necessary or effective to perfect a security interest in property subject to:
>
> . . .
>
> > (b) a certificate of title statute of this state under the law of which indication of a security interest on the certificate of title is required as a condition of perfection; but during any period in which collateral is inventory held for sale by a person who is in the business of selling goods of that kind, the filing provisions of this chapter (Part 4) apply to a security interest in that collateral created by him as debtor.[2]
>
> . . .
>
> (4) Compliance with a statute or treaty described in subsection (3) is equivalent to the filing of a financing statement under this chapter, and a security interest in property subject to the statute or treaty can be perfected *only* by compliance therewith[.]

1. SDCL 32–3–41 provides in part:
 [I]n the case of the certificate of title, if a notation of [a security interest] has been made by the secretary or county register of deeds on the face thereof or if notation of same has been made by the seller, buyer, owner, or holder of the instrument on the reverse thereof, [it] shall be valid against the creditors of the debtor, whether armed with process or not, and subsequent purchasers and other lien holders or claimants, but otherwise is not valid against them.

2. This latter clause provides that a different rule applies when a creditor has a security interest in inventory. That security interest is perfected by filing a financing statement. *See Draper Bank & Trust Co. v. Lawson*, 675 P.2d 1174, 1177 & n.2 (Utah 1983) (collecting cases).

3. If the parties had perfected their interests by complying with SDCL 32–3–38, priority would be established "according to the order of time in which the liens were noted." SDCL 32–3–35.

4. Farm Credit argues for a pro rata distribution of the proceeds from the sale of the trucks, citing *Ford Motor Credit Co. v. Troy Bank & Trust Co.*, 76 B.R. 836 (M.D.Ala.1986). There, two creditors whose perfected interests were secured by different collateral, became "tied" for rights to

(Emphasis added); *accord Pokela v. Dakotas United Methodist Fed. Credit Union (In re Huyck)*, 167 B.R. 908, 910 (Bankr.D.S.D. 1994).

[¶ 9.]Article 9 of the Uniform Commercial Code, codified at SDCL ch. 57A–9, governs secured transactions. *See* SDCL 57A–9–302(4) ("Duration and renewal of perfection of a security interest perfected by compliance with the statute or treaty are governed by the provisions of the statute or treaty; *in other respects the security interest is subject to this chapter.*") (emphasis added).

■ [¶ 10.]Since both security interests are unperfected, "the first to attach has priority." SDCL 57A–9–312(5)(b).[3] Both parties claim that their security interests in the trucks "attached" simultaneously and argue equitable principles to enforce their respective interests.[4] We disagree, and affirm because we conclude that Farm Credit's security interest never attached to the trucks.

The requirements for attachment are provided in SDCL 57A–9–203:

> (1) . . . a security interest is not enforceable against the debtor or third parties

proceeds in a bank account by simultaneously obtaining perfected security interests in the proceeds. The court held they were entitled to a pro rata distribution of the money in the bank account. That case is distinguishable because, among other reasons, it dealt with two perfected security interests attaching simultaneously.

Bank argues that it should be granted priority because its security interest is a "purchase money security interest" (PMSI). *See* SDCL 57A–9–107:
A security interest is a "purchase money security interest" to the extent that it is:
(a) Taken or retained by the seller of the collateral to secure all or part of its price; or
(b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.
We agree that Bank holds an *unperfected* PMSI. A PMSI in consumer goods is automatically perfected, i.e., no filing or other action is required. SDCL 57A–9–302(1)(d). However, to perfect a PMSI in a motor vehicle not in inventory, it must be noted on the title. SDCL 32–3–41; SDCL 57A–9–302(1)(d); –302(3)(b). A PMSI qualifies for special priorities only when perfected. *See* SDCL 57A–9–312(3) through (5).

with respect to the collateral and does not attach unless:

 (a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral . . . ; and

 (b) Value has been given; and

 (c) The debtor has rights in the collateral.

(2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching.

 [¶ 11.]Under subdivision (1)(a), the requirement that the collateral be "in the possession of the secured party pursuant to agreement" is strictly construed, i.e., "possession" must be actual. *See, e.g., Warsco v. Schaller Trucking Corp. (In re R. & L. Cartage & Sons, Inc.),* 118 B.R. 646, 649 (Bankr. N.D.Ind.1990) ("[U]nless the secured party is in possession of the collateral, in the absence of a written security agreement [describing the collateral] there is no security interest that is capable of being enforced against anyone."); *Clarkson Co. Ltd. v. Shaheen,* 533 F.Supp. 905, 917–18 (S.D.N.Y.1982) ("[P]ossession must be such as to prevent the debtor from having control of or access to the *res* of the pledge."). Here, since neither creditor had possession of the trucks, this portion of SDCL 57A–9–203(1)(a) does not apply.

[¶ 12.]The alternative portion of subdivision (1)(a) requires "a security agreement which contains a description of the collateral" signed by the debtor. Bank's security agreement describes the trucks and includes their vehicle identification numbers, satisfying this section. The question is whether Farm Credit's after-acquired property clause describes the trucks.

[¶ 13.]Farm Credit's security agreement describes certain titled vehicles other than the 1995 Dodge trucks. It provides that the security interest would include

 . . . all increases, additions, accessions thereto and substitutions therefor now owned or hereafter acquired, or held on consignment, including all proceeds and products thereof[.]

We agree with the conclusion reached in *Long Island Trust Co. v. Porta Aluminum Corp.,* 44 A.D.2d 118, 354 N.Y.S.2d 134, 142 (1974):

 We do not interpret the general language in the after-acquired property clause of the security agreement to cover vehicles other than those therein specifically enumerated, unless they were given and accepted in replacement of specified vehicles.

The purchase orders for the two 1995 Dodge trucks indicate two trade-in vehicles—two 1995 Ford pickup trucks. The Fords are not listed in Farm Credit's security agreement; therefore, the Dodge trucks were not replacement vehicles for any of the vehicles in which Farm Credit had a security interest. Absent a writing specifically describing the collateral, Farm Credit's nonpossessory security interest never attached to the Dodge trucks under SDCL 57A–9–203(1)(a).

[¶ 14.]Since Farm Credit cannot establish a sufficient writing under the statute it is unnecessary to analyze whether it met the provisions of subdivisions (b) and (c).[5] Bank's security interest meets all the conditions for attachment required under SDCL 57A–9–203(1): (a) Its security agreement, signed by Debtor, contains a description of the collateral; (b) Bank gave "value" by advancing the purchase price for the trucks; and (c) Debtor had rights in the collateral. Accordingly, Bank is entitled to the proceeds of the sale of the trucks. SDCL 57A–9–203(3).

[¶ 15.]The order granting summary judgment to Bank is affirmed.

---

**5.** We note that under different circumstances, an after-acquired property clause may effectively grant the creditor priority in collateral. *See, e.g.,* SDCL 57A–9–204; *First Nat'l Bank in Brookings v. John Deere Co.,* 409 N.W.2d 664 (S.D.1987); *see also First Nat'l Bank & Trust Co. v. Ford Motor Credit Co.,* 231 Kan. 431, 646 P.2d 1057, 1059 (1982) (noting that inventory financing is "generally called a floor plan, and under such a plan a car dealer gives a credit company a purchase money security interest in all motor vehicles then owned and thereafter acquired, and in all proceeds from the sale thereof.").

254 ■

[¶ 16.]MILLER, C.J., and AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.

