2000 SD 84

**THUNDERSTIK LODGE, INC., Harold Becker, William Becker, Charles Ross & Edwin S. Gage, Owners and Lessees, Plaintiffs and Appellees,**

v.

**Alvin REUER, Elva Reuer, and Leroy Reuer, Defendants and Appellants.**

No. 20966.

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 2000.

Decided June 28, 2000.

See also, 585 N.W.2d 819.

Steven R. Smith of Andera & Smith Law Office, Chamberlain, SD, Attorneys for plaintiffs and appellees.

Rick Johnson of Johnson, Eklund, Nicholson, Peterson & Fox, Gregory, SD, Attorneys for defendants and appellants.

KONENKAMP, Justice.

[¶ 1.] This case presents the question whether a land lease agreement violated our statutory prohibition against agricultural leases of longer than twenty years. Thunderstik Lodge, Inc. leased agricultural land from the Reuers for hunting purposes, under an agreement providing for an initial ten-year lease, with two ten-year renewal options. Because the provisions in the lease agreement were severable, we affirm the circuit court's ruling that although the second ten-year option was invalid, the rest of the agreement remains intact.

### Facts

[¶ 2.] In February 1987, the principals of Thunderstik Lodge, Inc. placed an advertisement seeking hunting land in the Chamberlain newspaper. The Reuers (Alvin and Elva Reuer and their son, LeRoy) responded. Following considerable negotiations, with both sides represented by attorneys, a lease agreement between Thunderstik and the Reuers was signed on May 6, 1988.

.[¶ 3.] The lease contains two provisions significant to this appeal. The first provision establishes the time frames the lease is in effect, providing for an initial ten year period, followed by two options to renew for an additional ten years each:

> The term of this lease shall run from March 1, 1988 to February 29, 1998 (original term), both dates inclusive. The Lessor and Lessee agree that this lease may be extended for two (2) additional ten (10) year terms, the first extension term to run from March 1, 1998 to February 29, 2008, the second extension term to run from March 1, 2008 to February 29, 2018, all upon the same terms and conditions set forth in this lease, except that the annual rent for the premises shall be increased to Thirty-three Thousand Dollars ($33,000.00) for the first extension term and Thirty-six Thousand Dollars ($36,000.00) for the second extension term.

The other significant provision is the savings clause:

> If any portion of this lease is held to be invalid or unenforceable, the remainder of this lease shall not be affected thereby and such remainder shall be valid and enforced to the fullest extent permitted by law.

At the same time the lease was executed, Thunderstik signed a purchase agreement, buying five acres of land from the Reuers for $1,500. Thunderstik Lodge, a "first class hunting lodge," was constructed on this acreage.

[¶ 4.] The relationship between the parties began to deteriorate in 1996. *See Thunderstik Lodge, Inc. v. Reuer,* 1998 SD 110, 585 N.W.2d 819 (*Thunderstik I*).[1] LeRoy was fired from his position as a guide for the lodge, and the Reuers accused Thunderstik of illegal hunting practices on

---

1. In *Thunderstik I,* we held that the parties were required to arbitrate, and that a violation of the Migratory Bird Treaty Act was not a material breach of the lease.

the leased land.[2] *Id.* ¶ 5 & n. 1, 585 N.W.2d at 820–21.

[¶ 5.] The controversy now before us arose from the Reuers' claim that the provisions of the contract create a thirty-year lease, void under South Dakota law. In a declaratory action, the circuit court ruled that the second of the two ten-year options was invalid, but severable, leaving the remainder of the lease intact and enforceable. The Reuers now appeal, contending (1) severance of the contract was improper; and (2) SDCL 43–32–2 mandates voiding the entire lease. Contract and statutory interpretation present questions of law reviewable de novo. *State Farm Mut. Auto. Ins. Co. v. Vostad*, 520 N.W.2d 273, 275 (S.D.1994); *Farm Credit Serv. v. First State Bank*, 1998 SD 13, ¶ 6, 575 N.W.2d 250, 251.

### Analysis and Decision

### 1. Severance of Contract

[¶ 6.] The trial court found that the second ten-year lease option was an agreement separate from both the original lease term and the first ten-year option now in effect. It also found that the second ten-year option could be severed from the rest of the lease without voiding the remaining agreement. The Reuers assert that the lease violates SDCL 43–32–2, and therefore it cannot be severed. Citing *Hedges v. Dixon County*, 150 U.S. 182, 192, 14 S.Ct. 71, 74, 37 L.Ed. 1044 (1893), they argue that a void instrument cannot be reformed. We believe, however, that the proper approach is to consider first whether the agreement's terms can be severed and then move to the question of whether the lease is invalid under the statute. *1st American Systems, Inc. v. Rezatto*, 311 N.W.2d 51, 56 (S.D.1981) ("so long as an illegal covenant is divisible, the remaining legal covenants are enforceable.") (citations omitted).

[¶ 7.] Under South Dakota law, certain contracts are divisible: "Where a contract has several distinct objects, one or more of which are lawful and one or more of which are unlawful in whole or in part, the contract is void as to the latter and valid as to the rest." SDCL 53–5–4. In *Commercial Trust and Sav. Bank v. Christensen*, 535 N.W.2d 853 (S.D.1995), we set forth the requirements of a severable agreement: "(1) the parties' performances must be separable into corresponding pairs of part performances and (2) the parts of each pair must be regarded as agreed equivalents." *Id.* at 857 (citing E. Allen Farnsworth, *Contracts*, § 5.8, at 382 (2d ed 1990); Restatement (Second) of Contracts § 183 (1979)). Additionally, "the agreement must not be an integrated scheme to contravene public policy," and "the party seeking enforcement must not have engaged in serious misconduct." *Id.* at 857 n. 2. A court may divide a contract into "corresponding pairs of part performances," and then enforce only those parts which do not "materially advance the improper purpose" of the agreement. Farnsworth, *supra*, § 5.8, at 381–82. *See Russell Miller Milling Co. v. McLean*, 48 S.D. 198, 203 N.W. 498, 499 (1925) (illegal penalty imposed under parties' agreement was separable from rest of contract and did not render entire contract void).

[¶ 8.] In *Christensen*, the parties contracted to lease agricultural land. 535 N.W.2d at 855. At the time, SDCL 43–32–2 prohibited leases of agricultural land for periods longer than twenty years, just as it currently does. *Id.* at 856. The lease spanned ten years and included an option to buy the property, exercisable by the tenant before the lease expired. *Id.* at 855. When the lease had been in effect for seven years, the parties made another agreement ("Addendum") restating the original lease terms, and giving the tenants the option to extend the original lease

2. The Reuers assert that the employment contract between LeRoy and Thunderstik was a part of the bargained-for agreement. As they fail to support the argument, however, we decline to discuss it.

for an additional twenty-year period. This "Addendum" also contained the option to buy the property, stating that it could be exercised any time before the expiration of the additional twenty years. This Court concluded that there was no distinct and separate consideration to support both the option to buy and the "Addendum." *Id.* at 858. Although the "Addendum" increased the purchase price by $1,000, that amount was only an additional sum to be paid for the land if the option was exercised. Therefore, the contract was not divisible, as the option was not supported by any additional consideration, and the only consideration tendered was for the lease itself.

[¶ 9.] We also addressed the question of divisibility in Mattson v. Rachetto, 1999 SD 51, 591 N.W.2d 814. There, the contract stated that the land was conveyed by warranty deed from the Mattsons to the Rachettos for the sum of $26,959.50. *Id.* ¶ 24, 591 N.W.2d at 819. The contract also provided that, "[f]or and in consideration of the agreement by Mattsons to sell the above-described property to Rachettos, Rachettos hereby lease to Mattsons the above-described property." *Id.* The Rachettos argued that there were two subject matters and therefore the contract should have been severed and the void agricultural lease rescinded, leaving the rest of the contract intact. *Id.* ¶ 22, 591 N.W.2d at 818. We rejected this argument, as well as the assertion that each part of the contract was supported by its own consideration and was therefore divisible. *Id.* ¶ 25, 591 N.W.2d at 819.

[¶ 10.] Looking at the requirements for a severable agreement, as stated in *Christensen*, first, the obligations of the parties here can be separated into "corresponding pairs of part performances." "[A] distinguishing mark of a divisible contract is that the consideration is not single, but can be apportioned to correspond with separate consideration offered by the other party." *Christensen*, 535 N.W.2d at 857 (citation omitted). Unlike the contracts in *Christensen* and *Mattson*, the agreement

here contains distinct consideration for each ten-year option. There was a separate annual rent set for each of the two corresponding extension terms: $33,000 for the first extension, and $36,000 for the second extension.

[¶ 11.] Second, each pair must be an agreed equivalent. "This means that the parts of the pair must be of roughly equivalent value. . . ." Farnsworth, *supra*, § 5.8, at 382–83. The Reuers do not dispute that the amounts to be paid by Thunderstik in exchange for the lease of the land are agreed equivalents, nor do we find otherwise. The terms of the options were negotiated between the parties, and while the precise value of the land lease may be debatable, the amount in the contract was of "roughly equivalent value."

[¶ 12.] Third, mindful of the limitation stated in *Christensen*, that "the agreement must not be an integrated scheme to contravene public policy," the Reuers contend that the lease contravenes public policy, with little explanation other than the assertion that there was an intent to create an invalid thirty-year lease. In *Schara v. Thiede*, 58 Wis.2d 489, 206 N.W.2d 129 (1973), the parties agreed that one would operate a tavern as his own business under the other's liquor license for the remainder of the term of that license. *Id.* at 130. This was done to avoid the expense of obtaining a new liquor license. Although the agreement purported to be an employment contract, the parties clearly understood that it was a front for the underlying agreement. In a dispute over the terms of the lease, the court held that the right to the lease was "expressly conditioned upon his faithful performance as 'manager' pursuant to the illegal agreement." *Id.* at 132. The court concluded that the contract "was so permeated with illegality" that it was not severable. *Id.* at 133. Here, the lease manifests no intrinsic scheme to violate public policy. While the Reuers contend that the intent of the parties was to create an illegal thirty-year lease on agricultural land, the core design

of the agreement was to access land for hunting. None of the limitations on divisibility, therefore, apply here.

[¶ 13.] Finally, the lease agreement specifically states that should part of the contract be invalid, the rest "shall" remain in effect. This express provision that an unenforceable portion may be severed from the agreement supports our conclusion. *See Whorton v. Dillingham*, 202 Cal. App.3d 447, 248 Cal.Rptr. 405, 407 (1988). Because the requirements for severability have been met, and because the parties themselves anticipated possible severance, we uphold the court's ruling that the last ten-year option was severable.

### 2. Invalid Lease Under SDCL 43–32–2

[¶ 14.] SDCL 43–32–2 states in part: "No lease or grant of agricultural land for a longer period than twenty years, in which shall be reserved any rent or service of any kind, shall be valid." The Reuers contend that their lease "fits squarely within" the language of this statute: the agreement created an invalid thirty-year contractual right to lease the land.

[¶ 15.] We examined this statute, and specifically the term "agricultural land," in *Ryan v. Sioux Gun Club*, 68 S.D. 345, 2 N.W.2d 681 (1942): "the statute should be construed so as not to apply to leases of land even though suitable for agriculture, when leased for a purpose other than agriculture, and exclusive of the right of agriculture." *Id.* at 683. The lease here provides that the land may be used "for any legal purpose, including ... agricultural, hunting and fishing, and any other related purpose." As agricultural use was not excluded, and in fact was specifically authorized, the statute applies to this land. *See Trauger v. Helm Bros., Inc.*, 279 N.W.2d 406, 411–12 (N.D.1979) (under a substantially similar statute, if lease is fairly interpreted to limit use of land to nonagricultural purposes, lease violating time limit not invalid).

[¶ 16.] Contracts are construed to carry out "valid contractual relations" rather than interpreted to render them invalid or impossible to perform. *Kuhfeld v. Kuhfeld*, 292 N.W.2d 312, 315 (S.D.1980) (citations omitted). Our review of the contract shows that the parties intended to create a lease agreement with options to renew for two separate ten-year periods. Leaving the second ten-year option intact would make the entire lease invalid, but as we have just determined, it may be severed from the contract. Therefore, while this is an agricultural lease in which rent or services are reserved, the term is not of a length prohibited by the statute after the second ten-year option is severed.

[¶ 17.] The Reuers point to the structure of the statute, emphasizing that it states "[n]o lease ... for a period of longer than twenty years, shall be valid." This they compare to other states' restrictions, such as Iowa's, which provides: "No lease or grant of agricultural lands, reserving any rent, or service of any kind, shall be valid for a longer period than twenty years." Iowa Const. art. I, § 24. They argue that under the language of Iowa's restriction, if a lease is structured to run for longer than the time allowed, the excess may be severed, bringing the lease into conformance. South Dakota's statute, on the other hand, appears to require that any lease purporting to exceed twenty years is unconditionally invalid. While there is some merit to this interpretation under *Christensen*, 535 N.W.2d at 857–58, we need not reach it because of our disposition on the issue of severance.

[¶ 18.] As stated in *Ryan*, "[o]ur statute ... undoubtedly found its source in New York, which had a constitutional provision dating back to the Constitution of 1846, and identical in language except that the period fixed is twelve years instead of ten." *Ryan*, 2 N.W.2d at 682 (noting that South Dakota's prohibition at the time was for periods longer than ten years). In *Parthey v. Beyer*, 228 A.D. 308, 238 N.Y.S. 412 (1930), the parties had a five year agricul-

tural land lease, and later created another lease on the same property, to take effect when the original lease expired. The second lease provided for a $25 per month increase in rent, and gave the lessee the option to buy the property within three years. *Id.* at 414. New York's Constitution, art. 1, sec. 13 stated: "No lease or grant of agricultural land for a longer period than twelve years, hereafter made, in which shall be reserved any rent or service of any kind, shall be valid." *Id.* at 413. The court held that the entire second agreement, including the option to buy, was invalid, but the original lease was valid because its terms did not violate the state's constitution. *Id.* at 415.

[¶ 19.] We hold that the second ten-year renewal period may be severed from the agreement, and that the original lease period, as well as the first ten-year renewal period, do not violate our prohibition against leases of agricultural land for longer than twenty years. *See Rezatto,* 311 N.W.2d at 56.

[¶ 20.] Affirmed.

[¶ 21.] MILLER, Chief Justice, and SABERS and GILBERTSON, Justices, concur.

[¶ 22.] AMUNDSON, Justice, dissents.

AMUNDSON, Justice (dissenting).

[¶ 23.] I respectfully dissent.

[¶ 24.] In this case, we are faced with a determination of whether a ten-year lease and a subsequently drafted option for two additional ten-year periods violates SDCL 43–32–2 which prohibits agricultural leases for a period greater than twenty years.

[¶ 25.] "An option to renew a lease is a unilateral contract under which the lessee retains an irrevocable right to extend the lease during the option period." *See Norton v. McCaskill,* 12 S.W.3d 789, 792 (Tenn.2000) (citations omitted). Further, "[w]hen an individual grants an option he ties up his rights and property for a specified period of time without binding the other side." *Cotter v. James L. Tapp Co.,* 267 S.C. 647, 230 S.E.2d 715, 719 (1976).

[¶ 26.] In the present case, it is clear that Reuers granted, in addition to the original ten-year lease, two ten-year options. Reuers, in essence, have contractually tied up their property for a total period of thirty years. Thunderstik Lodge has an irrevocable right to extend its lease for the full thirty years. A problem arises, however, because SDCL 43–32–2 does not allow this type of lease to extend longer than twenty years.

[¶ 27.] The majority opinion argues that the lease is not void for violating SDCL 43–32–2 because the agreement is severable. While the majority correctly notes the requirements for determining severability of an agreement under *Commercial Trust & Savings v. Christensen,* 535 N.W.2d 853 (S.D.1995), I do not agree that this lease is severable.

[¶ 28.] An essential element in determining severability is that the lease can not manifest an "intrinsic scheme to violate public policy." The majority argues that no intrinsic scheme to violate public policy existed and that the "core design of the agreement was to access land for hunting." In *Christensen,* we held " '[a] contract should be considered as a whole and all of its parts and provisions will be examined to determine the meaning of any part .' " 535 N.W.2d at 854 (quoting *Enchanted World Doll Museum v. Buskohl,* 398 N.W.2d 149, 151–52 (S.D.1986) (quotation omitted)). An examination of this contract shows that the "core design" was to tie up the property for thirty years through the use of two unilateral ten-year options inserted at the request of Thunderstik. Thunderstik has an irrevocable right to extend its lease, through the exercise of the two options, for a period of thirty years. This is undoubtedly a clear violation of SDCL 43–32–2. I would find that the second ten-year renewal option is not severable and the entire lease is void for violating our prohibition of such leases extending for longer than twenty years. To

hold otherwise would be to allow scriveners off the hook for intentionally circumventing the laws of this state through artful drafting.