# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

USAB NY INC.,

    Plaintiff,

v.

GLIC HEALTH LLC,

    Defendant.

C.A. No. 2026-0052-CDW

## REPORT DENYING PLAINTIFF'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

Date Submitted: May 7, 2026
Date Decided: May 20, 2026

Kurt M. Heyman, Elizabeth A. DeFelice, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware; Joseph L. Motto, Michael J. Stern, WINSTON & STRAWN LLP; *Counsel for Plaintiff*

Stephen C. Norman, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; *Counsel for Defendant*

**WRIGHT, M.**

One member of a Delaware limited liability company seeks advancement from the entity for fees and expenses it is incurring in prosecuting direct and derivative litigation it initiated against the entity's other two members. It contends the word "defend" always creates an advancement right when used in the sequence of "indemnify, defend, and save harmless," and unambiguously compels the entity to advance the member's offensive litigation fees and expenses. Considering the entity's operating agreement in light of applicable Delaware law, I conclude the term "defend" is ambiguous and I cannot grant the member's motion for judgment on the pleadings.

## I.    BACKGROUND

Plaintiff USAB NY Inc. is one of two 50% members of defendant Glic Health LLC.[1] Last November, USAB sued Glic's other 50% member and manager, Christopher Jacobs, for "breaches of contract, bad faith, willful misconduct, self-dealing, breaches of fiduciary duties, creation of false records, and abuse of his position as Managing Member and Chief Executive Officer of Glic[.]"[2] USAB also asserted aiding and abetting claims against Glic's non-voting member and Chief Operating Officer, Alexander Glovsky.[3]

---

[1] USAB is owned by Sean Conaghan. *See* Verified Compl. for Advancement ¶¶ 2, 6, Dkt. 1 ("Complaint" and cited as "Compl.").

[2] Verified Compl. ¶¶ 1–3, *USAB NY Inc. v. Jacobs*, C.A. No. 2025-1386-JTL (Del. Ch.) ("Underlying Action"), Compl. Ex. B.

[3] *Id.*

USAB now seeks advancement of its fees and expenses incurred in the Underlying Action under language in Glic's operating agreement that requires Glic to "indemnify, defend, and save harmless" USAB "from any loss, cost, damage, fee[,] . . . or expense incurred by reason of [USAB]'s status" as a member.[4] Because "indemnify" and "save harmless" work together and do not create a right to advancement,[5] USAB focuses its attention on "defend." According to USAB, the plain and unambiguous meaning of "defend" as used in the Operating Agreement requires Glic to fund USAB's offensive litigation against Jacobs and Glovsky on an ongoing basis.[6] Stated colloquially, USAB argues "defend" unambiguously means "advance" and "advance" unambiguously includes "attack," so "defend" unambiguously means "attack," and I must recognize this transitive[7] construction of the Operating Agreement as the only reasonable interpretation of its terms.

---

[4] Second Am. & Restated Ltd. Liab. Operating Agreement § 3(h)(iv), Compl. Ex. A ("Operating Agreement").

[5] *See Morgan v. Grace*, 2003 WL 22461916, at *3 (Del. Ch. Oct. 29, 2003) (rejecting argument "indemnify and save harmless" provision in LLC agreement created an advancement right); *Majkowski v. American Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 588–90 (Del. Ch. 2006) (explaining "indemnify and hold harmless" does not create an advancement right).

[6] *See* Opening Br. in Support of Pl.'s Mot. for J. on the Pleadings 13–17, Dkt. 14 ("Opening Br."); Reply Br. in Support of Pl.'s Mot. for J. on the Pleadings 8–12, Dkt. 18 ("Reply Br."); Verified Compl. for Advancement ¶¶ 24–25, 29, Dkt. 1. ("Compl.").

[7] *See iBio, Inc. v. Fraunhofer USA, Inc.*, 2016 WL 4059257, at *11 n.108 (Del. Ch. July 29, 2016) ("Under the transitive property of equality, if a=b and b=c, then a=c.").

## II. LEGAL STANDARD

The court grants a motion for judgment on the pleadings under Court of Chancery Rule 12(c) "only when no material issue of fact exists and the movant is entitled to judgment as a matter of law." *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993). Judgment on the pleadings "is a proper framework for enforcing unambiguous contracts[,]" but if "the meaning is ambiguous . . . a court cannot render judgment on the pleadings." *CURO Intermediate Hldgs. Corp. v. Sparrow Purchaser, LLC*, 2024 WL 2847264, at *4 (Del. Ch. June 5, 2024) (first quoting *OSI Sys., Inc. v. Instrument Corp.*, 892 A.2d 1086, 1090 (Del. Ch. 2006), and then quoting *Fiat N. Am. LLC v. UAW Retiree Med. Benefits Tr.*, 2013 WL 3963684, at *7 (Del. Ch. July 30, 2013)).

Delaware's principles of contract interpretation are, as the Supreme Court has noted, "well-established." *Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1043 (Del. 2023). "Delaware adheres to the 'objective' theory of contracts, *i.e.* a contract's construction should be that which would be understood by an objective, reasonable third party." *Id.* at 1044 (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)). Our courts will "enforce the plain meaning of clear and unambiguous language," but "[l]anguage is ambiguous if it is susceptible to more than one reasonable interpretation." *Id.* (quoting *Manti Hldgs, LLC v. Authentix Acq. Co., Inc.*, 261

- 3 -

A.3d 1199, 1208 (Del. 2021)). Ultimately, "[t]he determination of ambiguity lies within the sole province of the court." *Id.* (quoting *Osborn*, 991 A.2d at 1160).

## III. ANALYSIS

Applying the foregoing authorities here, I cannot grant judgment on the pleadings because the language in the Operating Agreement upon which USAB bases its demand for advancement of its offensive litigation expenses is not unambiguous. It fails on both parts of USAB's proposed transitive construction: "defend" does not unambiguously mean "advance," nor does it unambiguously mean "attack" even if it does mean "advance."

### A. "Defend" in the Operating Agreement Does Not Unambiguously Mean "Advance"

First, "defend" as used in the Operating Agreement does not unambiguously mean "advance." To explain why, I start with the full text of the language upon which USAB demands advancement:

> ***To the fullest extent permitted by law, the Company will indemnify, defend, and save harmless each Member***, Manager, agent, and Officer of the Company, and each of the respective agents, officers, partners, managers, members, employees, representatives, directors, and shareholders of any of the foregoing, ***from any*** loss, ***cost***, damage, ***fee (including without limitation, legal and expert witness fees and costs), or expense incurred by reason of (A) such party's status as such Member***, Manager, agent, officer, partner, manager, member, employee, representative, director, or shareholder,

- 4 -

(B) any act performed in good faith within the scope of the authority conferred by this Agreement, (C) any good faith failure or refusal to perform any act except those required by the terms of this Agreement, or (D) any performance or omission to perform any act based upon reasonable good faith reliance on the advice of accountants or legal counsel for the Company, provided that no indemnification will be given with respect to acts or omissions that constitute fraud, willful misconduct, or breach of this Agreement.[8]

To win its motion for judgment on the pleadings, USAB must show the foregoing language admits of only one reasonable construction and is thus unambiguous.[9] But USAB cannot, because this court has held that nearly identical language in a limited liability company agreement is ambiguous with additional language absent from the Operating Agreement.

---

[8] Operating Agreement § 3(h)(iv) (emphasis added). The double emphasis was used by USAB in its opening brief. *See* Opening Br. 12. Careful readers will note that the list of parties identified in Section 3(h)(iv)(A) appears to be a truncated version of the list of parties identified in the opening lines of Section 3(h)(iv). This was done even though Section 3(h)(iv)(A) uses "such party's status as" to refer to the original, longer list. What the drafters of the Operating Agreement intended by this—if they intended it—is unclear.

[9] *Levy Fam. Inves., LLC v. Oars + Alps LLC*, 2022 WL 245543, at *9 (Del. Ch. Jan. 27, 2022) ("[J]udgment on the pleadings and dismissal may be proper when a contract is unambiguous and the movant offers the only reasonable interpretation[.]"); *Cooper Tire & Rubber Co. v. Apollo (Mauritius) Hldgs. Pvt. Ltd.*, 2013 WL 5787958, *4 (Oct. 25, 2013) ("As the moving party here, [defendant] has the burden of establishing that its interpretation . . . is the only reasonable interpretation."); *Gibraltar Private Bank & Tr. Co. v. Boston Priv. Fin. Hldgs., Inc.*, 2011 WL 6000792, at *8 (Del. Ch. Nov. 30, 2011) ("[N]either party has met its burden of demonstrating that its interpretation is the only reasonable interpretation. Judgment on the pleadings is not appropriate.").

In *Fillip v. Centerstone Linen Services, LLC*, the court was called upon to interpret the following language in a limited liability company agreement:

> *The Company shall indemnify, defend and hold harmless each Manager* and Officer *for all costs*, losses, liabilities, and damages *whatsoever* paid or incurred by such Manager or Officer *in the performance of his duties in such capacity, including, without limitation, reasonable attorney's fees, expert witness and court costs, to the fullest extent provided or permitted by the Act or other applicable laws*. Further, in the event fraud or bad faith claims are asserted against such Manager or Officer, the Company shall nonetheless bear all of the aforesaid expenses subject to the obligation of such Manager or Officer to repay all such expenses if they are finally determined to have committed such fraud or bad faith acts.

2014 WL 793123, at *4 (Del. Ch. Feb. 27, 2014) ("*Fillip II*") (emphasis added).[10] Construing this language, the court held that the first sentence, by itself, was ambiguous:

> Plaintiff avers that an undertaking to "defend" for all costs incurred should be read synonymously with "advance;" this, too, is problematic, because although both "defend" and "advance" imply a duty to assist in litigation before its ultimate conclusion— rather than simply indemnify—*an obligation to defend is not the equivalent of an obligation to advance defense costs, in common usage.* If this first

---

[10] The parties' discussion of this case focused on the Master's report granting summary judgment to the plaintiff, not on the Vice Chancellor's opinion reviewing the report and denying exceptions. *See* Opening Br. 14 (discussing *Fillip v. Centerstone Linen Servs., LLC*, 2013 WL 6671663 (Del. Ch. Dec. 11, 2013) ("*Fillip I*")); Glic Health LLC's Opp'n Br. to Pl.'s Mot. for J. on the Pleadings 7, 10, 16–17, Dkt. 16 ("Answering Br.") (discussing *Fillip I*); Tr. of May 7, 2026 Oral Arg. on Pl.'s Mot. for J. on the Pleadings 6–9, Dkt. 23 ("Tr.") (same).

> sentence represented all of Article 3.7, its meaning
> would be ambiguous."

*Fillip II*, 2014 WL 793123, at *4 (emphasis added).[11]  But the court concluded

that "defend" did mean "advance" in that limited liability company agreement

because of the second sentence in the quoted language:

> Article 3.7, however, contains a second sentence that
> clarifies the meaning of the Article, read as a
> whole . . . .  The second sentence of the Article
> clearly assumes that the "aforesaid expenses"—
> including defense costs—will have been prepaid,
> that is, advanced, as only advanced expenses can be
> subject to an undertaking to repay.  The second
> sentence makes clear that, even in cases of fraud or
> bad faith, the Company is liable for advancement,
> subject to an undertaking to repay.  The ambiguity in
> the first sentence is thus cured by reading the Article
> in its entirety.

2014 WL 793123, at *5.

USAB concedes the contractual language in *Fillip II* is "relatively close

to the language here."[12]  Applying the *Fillip II* court's reasoning to Section

3(h)(iv)'s "relatively close" language, I find that Section 3(h)(iv) is ambiguous.

---

[11] The *Fillip II* court did not cite authority for the italicized language, but distinguishing between a duty to defend and a duty to pay defense costs as incurred is known in insurance law.  *See, e.g.*, *Gon v. First State Ins. Co.*, 871 F.2d 863, 867–68 (9th Cir.) (holding that a duty to pay "all legal expenses as incurred" is distinct from "the imposition of a duty to defend."); JORDAN R. PLITT, ET AL., COUCH ON INSURANCE § 200:4 (3d ed. Dec. 2025) ("The duty to defend is further distinct from the duty to investigate and from the duty to reimburse defense costs."); *cf. AT&T Corp. v. Clarendon Am. Ins. Co.*, 931 A.2d 409, 417 n.15 (Del. 2007) (citing *Gon* for a different proposition).

[12] Tr. 6.

Unlike the LLC agreement in *Fillip II*, there is no additional language in Section 3(h)(iv)—or anywhere else in the Operating Agreement—which "clarifies the meaning of [Section 3(h)(iv)], read as a whole,"[13] and thus cures the ambiguity in interpreting "defend" to mean "advance." In *Fillip II*, the second sentence clarified the ambiguity in the first sentence because it clearly contemplated payment of expenses on an ongoing basis ("aforesaid expenses"). *Fillip II*, 2014 WL 793123, at \*5. Here, the proviso at the end of Section 3(h)(iv) refers only to indemnification and does not hint at payment of litigation expenses as incurred (*i.e.*, advancement).[14] And the only other provision in the Operating Agreement addressing Glic's payment of a manager's expenses uses the word "reimbursement,"[15] a word which, without qualifying language, is just another word for indemnification.[16] "Defend" thus appears to be ambiguous in the Operating Agreement.

---

[13] *Fillip II*, 2014 WL 793123, at \*5.

[14] *See* Operating Agreement § 3(h)(iv) ("provided that no indemnification will be given with respect to acts or omissions that constitute fraud, willful misconduct, or breach of this Agreement"). The next paragraph references indemnification (relating to corporate opportunity claims) and also does not refer directly or indirectly to advancement. *See* Operating Agreement § 3(h)(v).

[15] *Id.* § 3(f) ("The Managers will be entitled to reimbursement from the Company for out-of-pocket expenses incurred in managing and conducting the business and affairs of, and otherwise acting on behalf of, the Company (including, without limitation, compensation expenses, overhead, and third-party expenses).")

[16] *See Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 509 (Del. 2005) ("Section 145 of the DGCL expressly contemplates protection for corporate officials from the risks of legal proceedings not only by way of reimbursement (*i.e.*, indemnification) but also by the pre-indemnification advancement of certain litigation-related expenses."); *see*

I do not believe the other decisions from this court cited by USAB on this issue are inconsistent with this ruling.[17] In *Majkowski v. American Imaging Management Services, LLC*, the court was only suggesting, in dicta, that inclusion of "defend" with "indemnify and hold harmless" would have given the plaintiff a "stronger argument" for advancement because the word "comes closer to suggesting the active employment of attorneys and continual payment as the attorneys' fees are incurred." 913 A.2d 572, 588 n.39 (Del. Ch. 2006). In *Brody v. DCiM Solutions, LLC*, the court stated "[a]s to 'defend,' it is understood in this context to create a right to advancement of litigation expenses." 2025 WL 1802239, at *13 (Del. Ch. June 30, 2025). But the two cases *Brody* cites as authority for that proposition—*Fillip* and *Majkowski*—do not say "defend" always means "advance." *Brody* quotes language from the Master's report in *Fillip I*, not the Vice Chancellor's subsequent opinion in *Fillip II* finding "defend" ambiguous without clarifying language, and in *Majkowski*, as noted, the court used hedging phrases like "stronger argument"

---

*also Indemnify*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("To reimburse (another) for a loss suffered because of a third party's or one's own act or default; hold harmless."); *Indemnify*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("To make good; to compensate; to make reimbursement to one of a loss already incurred by him."); *Indemnify*, MERRIAM-WEBSTER.COM THESAURUS, https://www.merriam-webster.com/thesaurus/indemnify (identifying "reimburse" as a synonym for "indemnify") (last visited May 20, 2026).

[17] *See* Opening Br. 14.

and "comes closer to suggesting" to describe in dicta how "defend" and "advance" might relate to each other.

In 2018, the court actually went further and held as a matter of law that "defend" does not mean "advance." In *REJV5 AWH Orlando, LLC v. AWH Orlando Member, LLC*, on cross-motions for summary judgment, the court held that pairing "to the fullest extent permitted by Section 18-108 of the [Delaware Limited Liability Company] Act" with "shall indemnify, defend, and hold the Members harmless" did *not* create an advancement right in a limited liability company operating agreement. C.A. No. 2017-0708-JRS, 52–57 (Del. Ch. Apr. 5, 2018) (TRANSCRIPT). Surveying authorities, including *Fillip II* and *Majkowski*, the court explained:

> These are sophisticated parties involved in this case. If they intended that the company would advance fees to a member in litigation against the company or against the other member, they would have provided for that in their agreement. Because there is no reasonable construction of Section 10.2(c)(i) that provides for the right of advancement, as a matter of law, I cannot compel the company to advance.

*Id.* at 57.[18]

_____

[18] The court in *REJV5 AWH Orlando* also interpreted *Fillip II* and *Majkowski* consistent with my interpretation here. *See id.* at 56 ("Vice Chancellor Glasscock's interpretation in the *Fillip* case from 2014 is a [d]ead-on construction of the two terms; whereas [f]ootnote 39 in the *Majkowski* case reflects the Court stating in dicta that use of the word 'defend' in the operative provision would have given the party seeking advancement a stronger argument. There was no construction of the term undertaken in that decision.").

- 10 -

USAB's motion for judgment on the pleadings fails at the first step of its proposed transitive construction of the Operating Agreement—whether "defend" unambiguously means "advance." "Defend" simply is not "a Delaware term of art" that *always* "creates an advancement right."[19]

## B. "Defend" in the Operating Agreement Does Not Unambiguously Include Offensive Litigation Expenses Even If It Means "Advance"

USAB's motion also fails at the second step—whether "defend," even if understood to mean "advance," unambiguously includes offensive litigation expenses. The argument fails because there is reason to question whether the Operating Agreement's use of "defend" is meant to include coverage of offensive litigation fees and expenses, from a linguistic, case law, and policy perspective.

First, the argument fails because the ordinary dictionary meaning of "defend" does not generally include "attack." This is true whether one considers legal dictionaries[20] or general ones.[21] USAB says these are

---

[19] Reply Br. 8. Glic appears to agree that "defend" means "advance" in Section 3(h)(iv), but only for defensive litigation expenses. *See* Answering Br. 6–8, 13–14. The parties' agreement that "defend" means "advance" does not make ambiguous language unambiguous, nor does it mean that the court will agree with that construction. *See Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1231 (Del. 1997) ("We are not bound, and the trial court was not bound, by the parties' present claim that the provision is unambiguous. We determine that question *de novo*.").

[20] *See Defend*, BLACK'S LAW DICTIONARY (6th ed. 1990) (*e.g.*, "To contest and endeavor to defeat a claim or demand made against one in a court of justice. To oppose, repel, or resist."); *Defend*, BLACK'S LAW DICTIONARY (12th ed. 2024) (*e.g.*,

- 11 -

"selective" citations because "like many words, 'defend' has various meanings,"[22] but this argument ignores the procedural posture into which USAB voluntarily placed itself: a motion for judgment on the pleadings. Even if multiple dictionary definitions are valid,[23] that just confirms the term's ambiguity, which I cannot resolve on a motion for judgment on the pleadings.

Second, the argument fails at the case law level because, as USAB concedes, it cannot cite a single reported decision of this court in which the court construed "defend" to require advancement for affirmative litigation initiated by the party seeking advancement.[24] USAB makes a valiant effort to distinguish the cases cited by Glic, the primary thrust of that effort being to

"To do something to protect someone or something from attack[.]"; "To deny, contest, or oppose (an allegation or claim) <the corporation vigorously defended against the shareholder's lawsuit>."; "To supply a legal defense for <the insurer will indemnify and defend the insured>."). These definitions include other phrasings for "defend," none of which, in my view, point strongly toward USAB's proposed construction, but one of which defines "defend" to mean "to agree to indemnify." *See Defend*, BLACK'S LAW DICTIONARY (6th ed. 1990); *but see* Reply Br. 8–9 (arguing one of seven definitions in the 12th edition of *Black's Law Dictionary* supports USAB's proposed construction).

[21] *See, e.g.*, *Defend*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/defend (last visited May 20, 2026) ("law: to deny or oppose the right of a plaintiff in regard to (a suit or a wrong charged)").

[22] Reply Br. 8.

[23] *But see Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 740 (Del. 2006) ("There may be more than one dictionary definition, and parties may disagree on the meaning of the definition as applied to their case, but 'if merely applying a definition in the dictionary suffices to create ambiguity, no term would be unambiguous.'") (quoting *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195–96 (Del. 1992)).

[24] Tr. 21.

point out that most of Glic's cited cases arise under the Delaware General Corporation Law,[25] not the Delaware Limited Liability Company Act,[26] and that parties to limited liability company operating agreements have greater contractual freedom.[27] True, but that argument conflates whether parties to LLC agreements *can* do it with whether the parties to the Operating Agreement *did* do it.[28] The former point is not contested, the latter is.

Third, the argument fails at the policy level because it leads to an arguably absurd result, which our law disfavors when considering the meaning of contractual terms.[29] USAB understandably focuses on Section 3(h)(iv)'s reference to Members in making its argument, but Section 3(h)(iv) covers many more parties. If USAB's interpretation of Section 3(h)(iv) is correct, Glic is on the hook for offensive litigation expenses incurred by *every* "agent, officer,

---

[25] 8 *Del. C.* §§ 101–398.

[26] 6 *Del. C.* §§ 18-101 to 18-1208.

[27] *See* Reply Br. 8–12.

[28] The argument also requires the court to conclude that the Operating Agreement's use of "defend" means something different—and broader—than the use of "in defending" by Delaware corporations under authority granted by Section 145(e) of the Delaware General Corporation Law. Contracting parties in the limited liability company space can—and do—contract for broader advancement rights than Section 145 permits, but using the root word of "defending" to express an intent to advance offensive litigation expenses is a strange way to go about it.

[29] *See Manti Hldgs, LLC v. Authentix Acq. Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021) (explaining that Delaware courts reject contractual interpretations that "produce[ ] an absurd result" or a result that "no reasonable person would have accepted when entering the contract") (citing *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010)).

partner, manager, member, employee, representative, director, and stockholder" of *any* "Member, Manager, agent, or Officer" of Glic, if those expenses are incurred by reason of that person's status relative to Glic.  So, as long as that person's grievance is connected to their status, Glic must underwrite that affirmative claim's pursuit on an ongoing basis.[30]  Perhaps that is what the drafting parties intended, but that is not obvious from the Operating Agreement's use of "defend."[31]

## C. Section 3(h)(iv)'s Use of "To the Fullest Extent Permitted By Law" Is Not Unambiguous Evidence That "Defend" Must Include Advancement for Offensive Litigation Expenses

Finally, I reject USAB's argument that the inclusion of the phrase "to the fullest extent permitted by law" in Section 3(h)(iv) is unambiguous evidence that "defend" must include advancement for offensive litigation expenses.[32] "To the fullest extent permitted" provisions are sometimes referred to as "savings clauses." *See, e.g.*, *Solak v. Sarowitz*, 153 A.3d 729, 742–43 (Del. Ch. 2016) (describing "to the fullest extent permitted by law" in a fee-shifting

---

[30] For example, if an employee of one of Glic's agents, working in Massachusetts, were to bring a claim under Massachusetts law against the agent for failing to comply with Massachusetts' wage-and-hours laws, Glic would, under USAB's interpretation of Section 3(h)(iv), be responsible for advancing that employee's fees and expenses incurred in pursuing the claim.

[31] *See ITG Brands, LLC v. Reynolds Am., Inc.*, 2025 WL 670818, at *9 n.80 (Del. Ch. Mar. 3, 2025) ("Delaware courts often consider the policy implications of their legal interpretations.") (citing *Manti Hldgs.* and other Delaware authorities).

[32] Opening Br. 12–14; Reply Br. 2, 5–7.

bylaw as a "savings clause").[33]  Their purpose is to permit the contractual provisions to which they apply to be enforced as far as the law allows, but no further.  They "save" the contractual provisions from invalidation if interpreting them to the full limits that the parties initially intended them would violate law or public policy.[34]  In this way, they function similarly to severability clauses. *See Brazao v. Pleasant Valley Apartments, LLC*, 685 F. Supp. 3d 113, 118–19 (D. Conn. 2023) (explaining that savings clauses and severability clauses both "capture the parties' intent to preserve all portions of the agreement permitted by law").

Understood this way, Section 3(h)(iv)'s "to the fullest extent" preamble serves a rights-protecting—not a rights-creating—purpose: *if* Section 3(h)(iv)'s use of "demand" creates a right to advancement of offensive litigation expenses, the court will enforce that right unless doing so is unlawful.  *See Brown v. LiveOps, Inc.*, 903 A.2d 324, 328 (Del. Ch. 2006) (explaining that "to

---

[33] *See also, e.g.*, *Thunderstik Lodge, Inc. v. Reuer*, 613 N.W.2d 44, 45 (S.D. 2000) (describing "to the fullest extent permitted by law" in a lease as a "savings clause"); *Clyde v. Franciscan Sisters of Allegany, N.Y., Inc.*, 190 N.Y.S.3d 714, 717 (N.Y. App. Div. 2023) (doing the same for a construction subcontract); *Sheehan v. Modern Cont'l/Healy*, 822 N.E.2d 305, 306 n.2 (Mass. App. Ct. 2005) (doing the same for a construction subcontract); 3 BRUNER & O'CONNOR CONSTRUCTION LAW § 10.36 (Jan. 2026 update) ("This language is often known as a 'savings' clause . . . . [T]his language has been construed as evidencing the parties' intent to fashion their indemnity obligation in conformance with state law regardless of whether the specific language of the agreement is in contravention of state law.").

[34] *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *10 (Del. Ch. Jan. 23, 2006) (describing "to the fullest extent permitted by law" as "an expression of the intent for the promise of indemnity to reach as far as public policy will allow").

the fullest extent permitted by law" in an advancement provisions is evidence that "the plain terms of the indemnification agreement and the company's bylaws provide for mandatory advancement to the broadest extent possible under Delaware law."). But "to the fullest extent permitted by law" does not make ambiguous language unambiguous, nor does it create rights the parties did not contract for.[35]

*       *       *

Interpreting "defend" to require expansive and affirmative coverage of offensive litigation fees and expenses to a potentially wide array of persons who might only be loosely connected to Glic is a lot of weight to put on a single word. The lack of authority supporting the use of "defend" this way within "indemnify, defend, and save harmless" suggests that construing Section 3(h)(iv) to require advancement of offensive litigation expenses is neither the most natural nor the only reasonable interpretation of "defend." Because USAB's interpretation of Section 3(h)(iv) is, at best, not the only reasonable interpretation, and because I lack any factual record regarding the circumstances surrounding the drafting, negotiation, and implementation of Section 3(h)(iv), I am unable to say that consideration of parol evidence would

---

[35] And, as noted earlier, the court in *REJV5 AWH Orlando* held on cross-motions for summary judgment that the combination of "to the fullest extent permitted by Section 18-108 of the [Delaware Limited Liability Company] Act" and "shall indemnify, defend, and hold the Members harmless" did not create an advancement right. *See* C.A. No. 2017-0708-JRS, 52–57 (Del. Ch. Apr. 5, 2018) (TRANSCRIPT).

- 16 -

be neither appropriate nor helpful.  I cannot grant judgment on the pleadings in USAB's favor.

## IV.    CONCLUSION

I recommend the court deny USAB's motion for judgment on the pleadings.  This is a Report under Court of Chancery Rule 144.  It is not a "final entitlement decision" so it is not subject to expedited exceptions under the Chancellor's assignment letter,[36] and exceptions are thus stayed pending a final entitlement decision.  I ask the parties to confer and submit a proposed scheduling order to bring the entitlement issue to a prompt, final decision.

---

[36] Dkt. 3 at 2.